# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **EVELYN FREEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-CV-154-SRW** |
| | ) | |
| **STERLING JEWELERS, INC., A** | ) | |
| **CORPORATION, OTHERWISE** | ) | |
| **IDENTIFIED AS KAY JEWELERS,** | ) | |
| **LOCATION NUMBER 271, DOTHAN** | ) | |
| **ALABAMA, AMY GOLDEN,** | ) | |
| **ROBYNEE KNEW, JOHN DOE,** | ) | |
| **RICHARD ROE, et al.,** | ) | |

## DEFENDANTS' MOTION TO STAY PROCEEDINGS AND COMPEL UTILIZATION OF THE RESOLVE PROGRAM WHICH INVOLVES BINDING ARBITRATION AND INCORPORATED MEMORANDUM OF LAW

Defendants Sterling Jewelers, Inc. ("Sterling"), Amy Golden, and Robynee Knew (collectively referred to as "Defendants"), by and through their undersigned counsel, hereby move this Honorable Court to enter an order staying the instant proceedings and compelling Plaintiff to utilize Sterling's alternative dispute resolution program, known as the "RESOLVE Program," which includes binding mandatory arbitration as its final step. In support this motion Defendants state as follows:

### PRELIMINARY STATEMENT

1.      This is an action by Plaintiff Evelyn Freeman ("Plaintiff") against her former employer Sterling and Sterling's employees Amy Golden and Robynee Knew. In her Complaint, Plaintiff alleges Sterling violated ERISA and discriminated against her because of her age. She also accuses the individually named Defendants of intentional interference with business

relationships, invasion of privacy, and outrage, all arising out of her employment with and her termination from Sterling.

2.      Plaintiff agreed to arbitrate any and all disputes arising out of her employment between Sterling and its employees through its Alternative Dispute Resolution Program known as the RESOLVE Program ("RESOLVE").  Indeed, Plaintiff <u>participated in two of the three</u> <u>steps</u> of the RESOLVE program, but now declines to arbitrate (Step 3 of the RESOLVE program) and instead is attempting to pursue her claims in court.

3.      For the reasons stated below, Defendants submit that pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* the Court should stay all proceedings and compel Plaintiff to bring her claims through Sterling's RESOLVE Program as required under its terms.

## <u>MEMORANDUM OF LAW</u>

**I.      <u>Factual Background</u>**

**A.      <u>Sterling's RESOLVE Program</u>**

1.      At all time material hereto, Sterling maintained an Alternative Dispute Resolution Program known as the RESOLVE Program. (Spagnola Aff. ¶ 3, Exhibit 1, hereto).

2.      A copy of the RESOLVE program is attached to the Affidavit of Joseph Spagnola as Exhibit "A".

3.      This program was implemented in 1998.  (Spagnola Aff. ¶ 12).  Sterling initially publicized the program by distributing written materials about the program to its employees and holding mandatory meetings to review the terms of the RESOLVE Program. (Spagnola Aff. ¶ 12 and Exhibit "B" thereto).

4.      Additionally, Sterling placed posters in its stores on the store's bulletin board, in the restroom and/or some other location readily visible to Sterling's employees.

(Spagnola Aff. ¶ 15). These posters advised employees that their participation in the RESOLVE Program was mandatory. (Spagnola Aff. ¶ 15 and Exhibit "C" thereto).

5.      Sterling audited its stores (including Plaintiff's) to ensure the poster was being displayed. (Spagnola Aff. ¶ 15 and Exhibit "D" thereto).

6.      Sterling distributed a copy of the RESOLVE Program on a yearly basis to all of its employees. (Spagnola Aff. ¶ 13).

7.      The RESOLVE Program specifically states that it applies to claims involving "discrimination or harassment on the basis of race, sex, religion, national origin, **age**, disability or other protected basis," "[v]iolations of federal, state [*e.g.,* ERISA],…or common law," and "claims of wrongful termination…." (Spagnola Aff. ¶ 10 and Exhibit "A" thereto).

8.      Further, the program specifically provides that "[a]rbitration is the final step. Neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision." (Spagnola Aff. ¶ 11 and Exhibit "A" thereto).

9.      The RESOLVE program is a multi-step grievance and arbitration procedure. (Spagnola Aff. ¶ 6).

10.     The employee initiates Step 1 of the program by completing a Step 1 claims form. (Spagnola Aff. ¶ 6).

11.     Upon receipt of the Step 1 claims form, the company initiates an investigation at its expense and provides the employee with a response within thirty (30) days of its receipt of the Step 1 form. (Spagnola Aff. ¶ 6).

12.     If an employee is not satisfied with the outcome at Step 1, the employee may proceed to Step 2 by completing a Step 2 appeal. (Spagnola Aff. ¶ 7).

13.     In Step 2, the employee's claim is either reviewed by a mediator or a panel of her peers.  If it is reviewed by a peer panel, those employees are selected by the employee appealing.  That panel hears evidence presented by the employee and by Sterling.  The decision of the peer panel is binding on Sterling.  The decision of the panel is NOT binding on the employee. (Spagnola Aff. ¶ 7).

14.     If the employee is not satisfied with the outcome at Step 2, she may appeal to Step 3, which is binding arbitration before the American Arbitration Association ("AAA").  The program requires Sterling to pay all AAA filing fee costs. (Spagnola Aff. ¶ 8).

15.     The Arbitration process is governed by the AAA's Rules for Employment Law Disputes, the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  All costs of arbitration are borne by Sterling.  The decision of the arbitrator is binding on all parties. (Spagnola Aff. ¶ 9).

### B.     Freeman Not Only Had Notice of But Initiated the RESOLVE Program

1.     Plaintiff was employed by Sterling, in Dothan, Alabama from approximately 1997 until her termination on or about November 2, 2006.  (See Complaint ¶ 9).

2.     Plaintiff was employed by Sterling in 1998 when Sterling implemented the RESOLVE Program.  (Complaint ¶ 9; Spagnola Aff. ¶ 12).  Plaintiff and all other Sterling employees were required to attend meetings to review the terms of this program at which time Sterling distributed written materials containing the terms of this program.  (Spagnola Aff. ¶ 12 and Exhibit "B" attached thereto).

3.     Freeman remained employed for approximately eight (8) years after Sterling implemented RESOLVE.  (Complaint ¶ 9).  Additionally, Freeman had access to Sterling's RESOLVE program via the company intranet.  (Spagnola Aff. ¶ 14).

4.      Joseph Spagnola is the Manager of the RESOLVE Program for Sterling. (Spagnola Aff. ¶ 2).

5.      On November 14, 2006, Mr. Spagnola sent Plaintiff a Step 1 claim form and a copy of a brochure explaining the RESOLVE program.   He also invited Plaintiff to telephone him with any questions.  (Spagnola Aff. ¶ 15 and Exhibit "E" attached thereto).

6.      On January 5, 2007, counsel for Plaintiff wrote to Sterling announcing that he represented Ms. Freeman.   (Spagnola Aff. ¶ 17 and Exhibit "F" attached thereto).

7.      On January 16, 2007, Sterling responded to counsel's letter.   Therein, counsel for Plaintiff was informed that his client "was bound to a mandatory and binding alternative dispute resolution (ADR) program…."  (Spagnola Aff. ¶ 18 and Exhibit "G" attached thereto).

8.      On or about February 12, 2007, Plaintiff completed the Step 1 claim form. (Spagnola Aff. ¶ 19 and Exhibit "H" attached thereto).

9.      On or about March 14, 2007, Sterling sent Plaintiff its response to her Step 1 grievance.  (Spagnola Aff. ¶ 21 and Exhibit "I" attached thereto).

10.      On our about April 12, 2007, Plaintiff, through her counsel, submitted the Step 2 claims form.  (Spagnola Aff. ¶ 22 and Exhibit "J" attached thereto).

11.      On or about August 9, 2007, the RESOLVE peer panel convened.   The Panel consisted of employees Plaintiff selected from a "pool" of about 25 employees.  Sterling paid for those employees to travel to Sterling's corporate office in Akron, Ohio to meet. The panel contacted Plaintiff with specific questions.  Ultimately, the panel ruled in Sterling's favor. On that date, Mr. Spagnola sent Plaintiff a letter through her counsel stating that she need to

submit a Step 3 Claim form to initiate binding arbitration. Plaintiff was again invited to contact Mr. Spagnola with any questions. (Spagnola Aff. ¶ 23 and Exhibit "K" attached thereto).

12.     At no time did Plaintiff's counsel or Plaintiff ever contact Mr. Spagnola to discuss any questions they may have had regarding the Resolve Program. (Spagnola Aff. ¶ 16).

## II.     <u>Argument and Supporting Law</u>

### A.     <u>The Supreme Court Has Held that Agreements to Arbitrate are to be Liberally Construed in Favor of Enforcement.</u>

In <u>Allied-Bruce Terminix Companies, Inc. v. Dobson</u>, 513 U.S. 265 (1995), the U.S. Supreme Court held that Congress' basic purpose in enacting the FAA was to overcome judicial suspicion of arbitration agreements. <u>See also</u> <u>Perry v. Thomas</u> 482 U.S. 483, 490 (1987) (stating that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). In light of this policy, the U.S. Supreme Court "has construed the FAA as establishing a liberal policy in favor of arbitration." <u>See</u> <u>Orcutt v. Kettering Radiologists, Inc.</u>, 199 F. Supp.2d 746, 750 (S.D. Ohio 2002) (citing <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279 (2002)); <u>See also</u>, <u>Haskins v. Prudential Insurance Company of America</u>, 230 F.3d 231, 235 (6th Cir. 2000); <u>Harbert International, LLC v. Hercules Steel Co.</u>, 441 F.3d 905, 906 (11th Cir. 2006) (stating that the "FAA liberally endorses and encourages arbitration as an alternative to litigation.").[1] The Supreme Court has stated that there is a strong presumption in favor of arbitration, and that any doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Moses H. Cone Memorial Hospital</u>

---

[1]     This reasoning applies to claims brought in state as well as federal courts, as "when the Federal Arbitration Act applies, 'it preempts State law on the subject of the enforceability of arbitration clauses.'" <u>See</u> <u>Goff Group Inc. v. Greenwich Ins. Co.</u>, 231 F.Supp.2d 1147, 1150 (M.D. Ala. 2002) (FAA preempts state law to the extent it undermines the goals or policies of the FAA) (citing <u>Volt Info. Sciences, Inc. v. Bd. Of Trustees of the Leland Stanford Junior Univ.</u>, 489 U.S. 468, 477, 109 S. Ct. 1248, 1255 (1989)).

v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983); See also Capitol Vial, Inc. v. Weber Scientific, 966 F.Supp. 1108, 1111 (M.D. Ala. 1997) (acknowledging a strong national policy favoring arbitration and that arbitration clauses should read liberally).  Accordingly, the FAA mandates that the lower courts stay a matter pending arbitration. See 9 U.S.C. §3.

**B.**    **The Federal Arbitration Act Supports the Arbitration of Employment-Related Claims.**

The FAA by its terms permits the use of arbitration to resolve disputes arising in the workplace:

> [a] written provision in…a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

See 9 U.S.C. § 2.

Applying this language, the Supreme Court has ruled that agreements to arbitrate workplace disputes must be enforced by federal courts pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. See Circuit City Stores, Inc. v. Saint Clair Adams, 532 U.S. 105 (2001).

In Circuit City, the Supreme Court extolled the advantages of arbitration agreements in employment disputes, finding that "[a]rbitration agreements allow parties to avoid the cost of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." Id. at 123; see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) (compelling arbitration of ADEA claim); Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217 (11th Cir. 2000) (compelling arbitration of race discrimination claim); Montes v. Shearson Lehman Brothers, Inc.,

128 F.3d 1456 (11th Cir. 1997) (requiring arbitration of FLSA claims pursuant to agreement was proper); Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992) (sexual harassment suit properly compelled to arbitration). The Supreme Court has stated that there is a strong presumption in favor of arbitration and that any doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

The Supreme Court of Alabama has likewise recognized a strong, federal policy favoring arbitration pursuant to FAA. See SouthTrust Securities, Inc. v. McClellan, 730 So.2d 620, 622 (Ala. 1999) (acknowledging that under the FAA any doubts concerning arbitriability should be resolved in favor of arbitration).

**C.    Enforcing Arbitration Agreements**

In considering whether to enforce an arbitration agreement, the United States Supreme Court has established a two-step inquiry. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985). In the first step, the court must determine whether the parties agreed to arbitrate their dispute. See Mitsubishi, 473 U.S. at 626; Matthews v. Rollins Hudig Hall Co., 72 F.3d 50, 53 (7th Cir. 1995); Folse v. Richard Wolf Med. Instruments Corp., 56 F.3d 603, 605 (5th Cir. 1995); Bennet v. Liberty Nat'l Fire Ins. Co., 968 F.2d 969 (9th Cir. 1992). In doing so, courts are required to resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.

In the second step, the court must ascertain whether the claims at issue are within the category of claims or contracts as to which agreements to arbitrate are held enforceable. Mitsubishi, 473 U.S. at 627-28. See also Circuit City, supra. Applying this two-step analysis to

8

the current facts, the Plaintiff here should be compelled to arbitrate her claims rather than bring them before this court.

### 1.     The parties agreed to arbitrate their dispute.

In Caley v. Gulfstream Aerospace Corporation, 428 F.3d 1359 (11th Cir. 2005), the Eleventh Circuit held that there was an agreement to arbitrate based on facts virtually identical to the facts presented here.  In Caley, the employer implemented a dispute resolution policy which required its employees to use its dispute resolution process as the exclusive means for resolving all covered employment related disputes between Gulfstream and its employees.  Caley, 428 F.3d at 1364.  The final step in Gulfstream's program was binding arbitration. Id. at 1365.   In this regard, Sterling's program is identical to Gulfstream's.

The Gulfstream policy was provided to all employees via mail.  Id. at 1364.  It was also posted on the company's intranet (which was accessible to the plaintiffs) and published in the management newsletter.   Id.   Additionally, the company posted notices about the policy's implementation on bulletin boards throughout the facility. Id.

The Sterling program, as in Gulfstream, was provided to all employees.  It was also available over the intranet (which was accessible to Ms. Freeman), was announced at the time it was initiated at store meetings which each employee had to attend (including plaintiff), and was publicized on multiple occasions through brochures and posters that were hung in all stores (including the store where Plaintiff worked).  (Spagnola Aff. ¶ 12-15 and Exhibits "B", "C", and "D" attached thereto).

Gulfstream's policy identified which employment disputes were covered under its program and further provided that its policy was a condition of employment.  Similarly, Sterling's Resolve program clearly provides that it is mandatory and that it covers common law

claims, claims for discrimination, and claims for violations of any federal (*i.e.* ERISA) and state law. (Spagnola Aff. ¶ 10, and Exhibits "A" and "C" attached thereto).

Despite Gulfstream's well-published ADR program, two groups of plaintiffs filed lawsuits against it. Gulfstream subsequently moved to compel arbitration, which the district court granted. Caley, 428 F.3d at 1364. Plaintiffs then appealed the decision to the Eleventh Circuit. Id. On appeal, Plaintiffs attempted to argue that Gulfstream's ADR program did not constitute an enforceable agreement. Id. The Eleventh Circuit disagreed. It ruled that the arbitration provision in Gulfstream's dispute resolution policy constituted a binding agreement under the FAA and applicable state law.[2] Id. at 1368-69, 1373-76. The Court reiterated that under the FAA, "[a]ll that is required is that the arbitration provision be in writing." Caley, F.3d at 1369 (internal quotations) (citations omitted). Additionally, the Court determined that the arbitration provision was enforceable under Georgia contract law because all the elements were satisfied. Id. At 1373-76.

The analysis here leads to the same conclusion as in Caley—Sterling's RESOLVE program and arbitration provisions contained therein are enforceable under the FAA. As in Caley, Sterling has a dispute resolution program that plainly states that employees are required to submit certain employment related disputes to a multi-step process alternative dispute resolution process, the last step of which is binding arbitration. (Spagnola Aff. ¶¶ 10 and 11). Strikingly similar to the facts in Caley, Sterling's ADR program was provided to Freeman when it was first implemented (and then again on a yearly basis), was published on the company's intranet, and

---

[2]    In *Gulfstream* the court analyzed applicable Georgia law. Id. at 1373-76. In the case at bar, Alabama law applies. For all practical purposes, Alabama law is no different than that in Georgia. Under both Alabama and Georgia law, the elements necessary to establish the existence of an enforceable contract include: (1) an offer; (2) an acceptance; (3) consideration; and (4) mutual assent to the contracts essential terms. Compare Baptist Health System, Inc. v. Mack, 860 So.2d 1265, 1273 (Ala. 2003) with USA Manufacturing Corp. v. Perfection-Schwank, Inc., 610 S.E. 2d 600, 603 (Ga. Ct. App. 2005).

was explained in various postings at the store where she worked. (Spagnola Aff. ¶¶ 12-15 and Exhibits "B" and "C" attached thereto).

Even more compelling in this case is the fact that Freeman received a brochure about the RESOLVE program (including its requirement for arbitration) following her termination, and at the time she was contemplating filing a claim under RESOLVE, she was invited to call the Manager of the RESOLVE Program if she had any questions on how the program worked. (Spagnola Aff. ¶ 16).   Thereafter, Freeman retained counsel. (Spagnola Aff. ¶ 17, and Exhibit "F" attached thereto).  Having retained counsel and having Sterling's RESOLVE Program in-hand, Plaintiff elected <u>not</u> to file suit, but instead she elected to initiate Step 1 of the RESOLVE Program.   (Spagnola Aff. ¶ 19 and Exhibit "H" attached thereto).  Yet, neither Plaintiff nor her counsel ever called Mr. Spagnola with questions about the workings of RESOLVE.  (Spagnola Aff. ¶ 16).

Plaintiff's consent to pursue her claims in RESOLVE clearly is established by her participation in the program.  "Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance."  <u>Lanier Worldwide, Inc. v. Clouse</u>, 875 So.2d 292, 296 (Ala. 2003).  Relying on Plaintiff's agreement to pursue her claims in RESOLVE, Sterling invested significant time and financial resources in having Plaintiff's allegations investigated and then having her claim adjudicated; especially at Step 2, where a panel of Plaintiff's peers gathered in Akron, Ohio at Sterling's expense (which encompassed both travel expenses and the employees' pay).   (Spagnola Aff. ¶ 23).   Here, Freeman's submission of her Claim Form pursuant to Step 1 and her Appeal in adherence to Step 2 of RESOLVE (after she and her counsel received a copy of the program which made it known that Step 3 is arbitration) is clearly reflective of her agreement to comply with the RESOLVE

11

Program. Plaintiff's displeasure with the fact that a panel of her own peers decided against her on the merits does not provide her with a basis unilaterally to terminate the RESOLVE process and to initiate a lawsuit.

Furthermore, Freeman, like the plaintiffs in <u>Caley</u>, cannot reasonably contend that the arbitration clause contained in Sterling's RESOLVE Program is unenforceable under general state law principles governing the formation of contracts.[3]  Under Alabama law, "the requisite elements of a contract include:  an offer and acceptance, consideration, and mutual assent." <u>Baptist Health Systems v. Mack</u>, 860 So. 2d 1265, 1273 (Ala. 2003).[4] Here, all the elements are met.  An offer was made during the employment relationship through Sterling's distribution of the RESOLVE Program to the plaintiff, (through posters, brochures, its intra-net and the initial roll-out materials).   Furthermore, a copy of the program was provided to Plaintiff post-termination.  There was consideration which includes the Plaintiff's continued employment, the expenses Sterling incurred at Step 1 to investigate and in convening a panel at Step 2, as well as its agreement to pay all arbitration fees of the AAA at step 3.  There was also acceptance and an assent to the terms.  This was clearly manifested in plaintiff's continued employment and her participation in Steps 1 and 2 of the program on the advice of counsel.  Consequently, under Alabama contract law, the parties entered into a valid agreement to arbitrate plaintiff's claims.

Not only has the Eleventh Circuit compelled arbitration in circumstances identical to this one, but numerous District Courts have enforced the very agreement – Sterling's RESOLVE Program – at issue in this case.  For example, in <u>Hyde v. Sterling Jewelers, Inc.</u>, 2006 U.S. Dist.

---

[3]      In determining whether a binding arbitration agreement exists between two parties, "courts apply the contract law of the particular state that governs the formation of the contracts.   The 'federal policy favoring arbitration, however, is taken into consideration even when applying ordinary state law.'" <u>Caley</u>, 428 F.3d at 1368.
[4]      <u>Caley</u> applied the general principals of Georgia contract law to determine if Gulfstream's arbitration provision was enforceable.  However, the elements required to have an enforceable contract under Alabama law are the same as those required under Georgia law.  Thus, the analysis is the same. <u>See</u> *infra* footnote 2.

81755 (N.D. Ohio), the District Court concluded that Sterling's distribution of written materials to its employees explaining RESOLVE, the plaintiff's continued employment after receiving these materials, and his participation in the RESOLVE Program was more than sufficient "to establish that the Plaintiff [intended to] accept the Defendant's offer and [that he was] in fact bound by the terms of the RESOLVE Program." Hyde at *5.

Likewise, the United States District Court for the Eastern District of Michigan determined that the plaintiff had agreed to resolve her FMLA claims through Sterling's RESOLVE Program and that the terms of the program, specifically arbitration, should be enforced. Johns v. Sterling Jewelers, Inc., 2006 U.S. Dist. Lexis 91808 *3-4 (E.D. Mich. 2006). The Court reasoned that Sterling's notification of the program's mandatory nature through written materials, employee meetings, and workplace posters, as well as and the plaintiff's continued employment after such notification, supported a finding that there was indeed an agreement to arbitrate and that it was enforceable. Johns, at *3-4. Neither the facts nor the agreement are any different here than in the Hyde or the Johns case. Consequently, this Court, as other numerous courts have done, should compel the plaintiff to arbitrate her claim through Sterling's RESOLVE Program.[5]

> ## 2.    The claims at issue are within the category of claims or contracts as to which agreements to arbitrate are held enforceable

The claims at issue here are undisputedly among those as to which agreements to arbitrate are held enforceable.   Here, Freeman alleges employment discrimination and ERISA

---

[5]       For the convenience of the Court, Sterling has attached the Johns and Hyde opinions to this motion as Exhibits 2 and 3.  Additionally, Sterling has attached several other memorandum opinions and/or orders from various other courts compelling the use of Sterling's RESOLVE Program in circumstances similar to those here. See Exhibits 2 through 7.

claims as well as several tort claims, all of which relate to her termination from Sterling.  The RESOLVE Program plainly encompasses these claims.  It specifically identifies claims of age discrimination "violations of federal [e.g. ERISA], state, or common law," and "claims of wrongful termination" as covered claims.  (Spagnola Aff. ¶ 10 and Exhibit "A" thereto).

Moreover, the Courts routinely have held that claims similar to the ones Freeman raises are arbitrable.  See Caley, 428 F.3d at 1364 (affirming district court's ruling compelling arbitration of plaintiffs ERISA, age discrimination, and FLSA claims arising out of plaintiffs' employment with defendant); Johnson v. Macy's South LLC, 2007 U.S. Dist. LEXIS 72519 *11-12 (N.D. Ga. 2007) (granting defendant's motion to compel plaintiff to arbitrate his age discrimination claim based on the provision in the employer's ADR program which required him to arbitrate "all employment-related legal disputes."); Goff Group, Inc., 231 F.Supp. 2d 1147 at 1148 (compelling plaintiff to arbitrate claims for intentional torts such as outrage and tortuous interference with business relations).  Further, even if there were questions as to the arbitrability of Freeman's claims, which clearly there are not, it is well-settled that any "'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" Johnson v. Macy's South LLC, 2007 U.S. Dist. LEXIS 72519 *7 (N.D. Ga. 2007) (quoting Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315 (11th Cir. 2002).

Finally, Freeman's participation in the RESOLVE process waives any argument that RESOLVE does not apply to the claims at issue.  Freeman cannot now assert that her claims are not within the scope of the RESOLVE Program given the fact that she not only invoked the process once, but twice, AND with the aid of counsel.  Thus, there can be no rational argument as to whether arbitration is proper regarding to Freeman's claims.

### III.    <u>CONCLUSION</u>

For these reasons, the Court should stay all proceedings and compel Plaintiff's utilization of the RESOLVE Program.

DATED this 12th day of March 2008.

/s/ Mieke A. Hemstreet
Mieke A. Hemstreet (ASB-9100-I69H)
JACKSON LEWIS LLP
First Commercial Bank Building
800 Shades Creek Parkway
Suite 870
Birmingham, Alabama 35209
Telephone:     205-332-3115
Facsimile:      205-332-3131
e-mail: hemstrem@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing by U.S. Mail and/or electronically on this the 12th day of March, 2008 to the following counsel of record:

John E. Byrd, Esq.
Joseph W. Lewis, Esq.
P.O. Box 536
Dothan, Alabama 36302
**Attorneys for Plaintiff, Evelyn Freeman**

/s/ Mieke A. Hemstreet
Of Counsel

# EXHIBIT 1

## AFFIDAVIT OF JOSEPH SPAGNOLA

**STATE OF** ___CT___ )

**COUNTY OF** ___Fairfield___ )

1.   My name is Joseph Spagnola. I am over the age of 19 and have personal knowledge of the information contained in this affidavit.

2.   I am currently employed with Sterling Jewelers, Inc. ("Sterling") as the Manager of the RESOLVE Program. Sterling owns and operates numerous retail jewelry centers throughout the United States, one of which is located in Dothan, Alabama.

3.   Sterling has maintained an Alternative Dispute Resolution Program known as its RESOLVE Program ("RESOLVE") at all times relevant to the claims alleged by Evelyn Freeman in her lawsuit originally filed in Houston County, Alabama (Civil Action No. CV2008-041 A).

4.   In my capacity as Manager of Sterling's RESOLVE Program, I have knowledge of RESOLVE'S terms and how it is distributed to Sterling's employees.

Page 1 of 1

5.    A true and correct copy of the RESOLVE Program is attached hereto as Exhibit A.

6.    RESOLVE is a multi-step grievance and arbitration procedure. The employee initiates Step 1 of RESOLVE by completing a Step 1 claims form. Upon receipt of the Step 1 claims form, Sterling initiates an investigation and provides the employee with a response within thirty (30) days after receiving the Step 1 form. (See Exhibit A).

7.    If an employee is not satisfied with the outcome at Step 1, the employee may proceed to Step 2 by completing a Step 2 appeal claim form. In Step 2, the employee's claim is either reviewed by a mediator or a peer panel that is selected by the employee. (See Exhibit A). If the review is done by a peer panel, that panel hears evidence presented by the employee and by Sterling. The decision of the peer panel is binding on Sterling. The decision of the panel is NOT binding on the employee.

8.    If the employee is not satisfied with the outcome at Step 2, she may appeal to Step 3, which is binding arbitration before the American Arbitration Association ("AAA"). (See Exhibit A).

Page 2 of 2

9.    The Arbitration process is governed by the AAA's Rules for Employment Law Disputes, the Federal Rules of Civil Procedure and the Federal Rules of Evidence. (See Exhibit A). All costs of arbitration, including AAA filing fees, are borne by Sterling. The decision of the arbitrator is binding on all parties. (See Exhibit A).

10.    The RESOLVE Program states that it applies to claims involving "discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other protected basis," "[v]iolations of federal, state [e.g., ERISA],...or common law," and "claims of wrongful termination...." (See Exhibit A).

11.    The program specifically provides that "[a]rbitration is the final step. Neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision." (See Exhibit A).

12.    RESOLVE was implemented in 1998. All Sterling employees were required to attend meetings to review the terms of this program. During these meetings, Sterling distributed written materials setting out the terms of the program. A true and correct copy of the materials covered and/or distributed at the time RESOLVE was implement are attached as Exhibit B.

13.    Each year, Sterling distributes to its employees a copy of the RESOLVE Program.

14.    Sterling posts copies of the RESOLVE program on its intranet, which is available to all employees at any time.   The terms of the Program are published in brochures provided to its employees.

15.    Additionally, Sterling has posters in its stores either on the store's bulletin board, the restroom, or some other location readily visible to Sterling's employees. These posters advised employees that their participation in the RESOLVE Program was mandatory.  A true and correct copy of this poster is attached hereto as Exhibit C.  A copy of this poster was displayed in the store in Dothan, Alabama where Freeman worked.  True and correct copies of portions of recent audits completed for the store where Freeman worked reflecting that the RESOLVE poster was displayed is attached hereto as Exhibit D.

16.    On or about November 14, 2006, I personally mailed Evelyn Freeman a copy of the RESOLVE Program brochure and a claim form reminding her that she was required to bring any claims she had of alleged unlawful conduct against Sterling and/or its employees through Sterling's RESOLVE program.  I included a claim form with this mailing and requested that she contact me with any questions.

Page 4 of 4

She did not do so at this time or any other time. A true and correct copy of the letter I sent to Freeman is attached hereto as Exhibit E.

17.    On January 5, 2007, counsel for Ms. Freeman contacted Sterling announcing that he was representing Ms. Freeman. A true and correct copy of this letter is attached hereto as Exhibit F.

18.    On January 16, 2007, Sterling responded to Freeman's counsel's letter. Sterling specifically informed him that Freeman "was bound to a mandatory binding alternative dispute resolution (ADR) program...." A true and correct copy of this letter is attached hereto as Exhibit G.

19.    Following Sterling's January 16, 2007 letter, Ms. Freeman, through her counsel, completed and returned the Step 1 Claim Form. A true and correct copy of Freeman's claim form is attached hereto as Exhibit H.

20.    Freeman stated on her Step 1 Claim Form that she had been wrongfully terminated resulting in violations of both Alabama and federal law including, among others, outrage, age discrimination, defamation, and ERISA. (See Exhibit H).

21.    Sterling investigated Freeman's claim. On or about March 14, 2007, I informed her that her Step 1 grievance had been denied. A true and correct copy of

the letter I sent Freeman through her counsel regarding the outcome of her Step 1 claim is attached hereto as Exhibit I.

22.    Freeman, through her counsel, again indicated her assent to the terms of the RESOLVE Program, as on April 12, 2007, Freeman submitted the Step 2 Claim Form appealing the initial decision.  A true and correct copy of Freeman's appeal is attached hereto as Exhibit J.

23.    On or about August 9, 2007, the RESOLVE peer panel convened. The Panel consisted of employees Freeman selected from a "pool" of about 25 employees.    Sterling paid for the selected employees (which included both employee wages and travel expenses) to meet at its corporate office in Akron, Ohio to review Freeman's claim.  The Panel contacted Freeman with specific questions. Ultimately, the Panel ruled in Sterling's favor.  On that date, I sent Freeman a letter through her counsel stating that she would need to complete a Step 3 Claim Form to initiate binding arbitration.   Once again, I asked her to contact me with any questions.   A true and correct copy of the August 9, 2007 letter is attached hereto as Exhibit K.

24.    All of Freeman's claims fall within the scope of Sterling's RESOLVE Program because they arise out of her employment and termination from Sterling. (See Exhibit A).

25.    Further Affiant Sayeth Naught.

*Joseph Spagnola* (signature)                                      3/12/08
Joseph Spagnola                                                   Date

STATE OF ~~OHIO~~ CT                          )

COUNTY OF __Fairfield__                       )

I, __FRANK RIZZO_____, a Notary Public in and for said County in said State, hereby certify that __Joseph L. Spagnola__, whose name is signed to the foregoing and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal, this __12__ day of March, 2008.

(signature)

Notary Public                         FRANK RIZZO
                                      NOTARY PUBLIC
My Commission Expires: MY COMMISSION EXPIRES JULY 31, 2009

# EXHIBIT A

# THE RESOLVE PROGRAM

### Alternative Dispute Resolution (ADR)



# RESOLVE
## 1-800-394-4205

**STERLING JEWELERS Inc.**



# STERLING JEWELERS Inc.

*Sterling's success and momentum is due in part to the continuous improvements made within all facets of our business. As such, Sterling is pleased to offer a program designed to assist both the Company and you in resolving workplace misunderstandings, problems and/or disputes.*

*Workplace disputes occasionally occur and can lead to lawsuits. Lawsuits are disruptive, involve enormous expense, can take years to resolve and often result in disappointing outcomes.*

*For these reasons, the "RESOLVE" Program was designed to provide a more efficient way to deal with workplace disputes <u>without going to court!</u> This program involves a multi-step approach for dealing with disagreements over employment actions that an employee believes are unlawful.*

*This program has many benefits including:*

➤ *a fast and economical process;*

➤ *opportunity for dispute review by a skilled **Mediator** or **Review Panel;***

➤ *the ability to appeal to an outside **Arbitrator;** and,*

➤ *provides all the remedies and awards other wise available through the judicial system.*

*On the following pages, you'll find a description of the program, how it works and how to use it.*

---

# THE RESOLVE PROGRAM

# RESOLVE
## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## PROGRAM HIGHLIGHTS

➤ Effective June 1, 1998

➤ Applicable to all employees.

➤ Provides employee with a fast, fair, private, inexpensive way to handle employment disputes that involve alleged unlawful actions.

➤ Involves 3 Steps:

## STEP 1

### Filing a Complaint:

An employee who believes he/she has been sub-jected to an unlawful employment action, harass-ment or termination must contact the **RESOLVE Program Administrator** and complete a *RESOLVE Program Complaint Form.*

The party must specify in the form how he/she has been subjected to an unlawful action and the specific relief sought. Unless prohibited by law, the claim form must be fully completed, postmarked and sent to the RESOLVE Program Administrator within one (1) year of the alleged unlawful action.

After an investigation, a response (answer) will be postmarked to the employee no later than 30 days after receipt of the complaint form.

If the employee is satisfied with the response, no further action is required.

# THE RESOLVE PROGRAM

A written agreement containing the terms of any settlement will be signed by the parties who will be legally bound by the terms of the agreement.

If not satisfied by the outcome of **Step 1**, an employee may proceed to **Step 2**. An employee must request, fully complete and return a **Step 2** appeal form which must be postmarked within 30 days of the response date of the **Step 1** determination.

## STEP 2

### Appeal For Further Review

**Step 2** allows the employee to appeal for further review if he/she is not satisfied with the outcome of **Step 1**.

In **Step 2**, the case is assigned by the RESOLVE Program Administrator to:

➤ a skilled outside *Mediator*

or

➤ a 5-member *Review Panel*.

As in **Step 1**, if the employee is satisfied with the response, no further action is required.

If not satisfied by the outcome of **Step 2**, an employee may proceed to **Step 3**. An employee must request, fully complete and return a **Step 3** appeal form, which must be postmarked within 30 days of the response date of the **Step 2** determination.



# THE RESOLVE PROGRAM

## STEP 3

### Arbitration

**Step 3** allows the employee to file for neutral and binding *arbitration* if the employee is dissatisfied with the decision or proposed resolution in **Step 2**.

**Step 3** involves a formal hearing where both the employee and the Company may utilize legal representation. This step utilizes a jointly selected outside/neutral arbitrator from the American Arbitration Association. This independent, not-for-profit agency was founded in 1926 and helps to resolve tens of thousands of disputes a year.



The Arbitration will take place at a mutually convenient time and location near the site where the complaint arose and shall be governed by the Federal Arbitration Act, the substantive law of the jurisdiction where the complaint arose, the National Rules for the Resolution of Employment Disputes of the American Arbitration Association and the Resolve Program Arbitration rules.

*Specific rules for **Step 3** Arbitration will be provided upon request or at the time the employee invokes the **Step 3** process.*

## THE RESOLVE PROGRAM

The Company will pay for the Arbitrator's fees.

The Arbitrator will hear the case and render a decision. The Arbitrator can award all remedies available as provided by law. The decision of the Arbitrator will be final and binding upon the employee and the Company.

Arbitration is the final step. Neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision.

The company prohibits any retaliation against you for using this program.

## RESOLVE
## 1-800-394-4205

## THE RESOLVE PROGRAM

## WHAT IS COVERED UNDER THE RESOLVE PROGRAM

The *RESOLVE* Program applies to only these types of claims:

➤ Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other protected basis.

➤ Retaliation for filing a protected claim (such as Workers' Compensation) or exercising protected rights under any statute.

➤ Violations of federal, state, county, local or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment.

➤ Personal injuries arising from an employment decision or action except those covered by Workers' Compensation.

➤ Breach of any express or implied contract; breach of a covenant of good faith and fair dealing, claims of wrongful termination or constructive discharge, or claims for incentives (such as bonuses).

➤ Embezzlement, theft, restitution, trade secrets/propriety information, other willful misconduct.

## WHAT IS NOT COVERED

➤ Claims for Workers' Compensation benefits.

➤ Criminal charges.

# THE RESOLVE PROGRAM

➤ Claims for unemployment compensation benefits.

➤ Claims for employment decisions/actions NOT related to discrimination, harassment or violations of any law.

## QUESTIONS AND ANSWERS

**If my dispute is covered, is it necessary that I use this program?**
All employees are required to use the program to resolve applicable disputes.

**If I am terminated, can I use the RESOLVE Program?**
Yes, but only claims involving alleged unlawful actions are subject to the RESOLVE Program.

**If I quit because I've been sexually harassed, do I have to use the program?**
Absolutely. The RESOLVE Program covers harassment.

**What is the first step? How do I get started with a claim?**
Within 1 year of any action, you must call 1-800-394-4205 to contact the **RESOLVE Program Administrator** and arrange to complete a *RESOLVE Program Claim Form*. In **Step 1**, an Employee Relations Specialist will interview you and investigate your claim. The faster you call, the faster the resolution.

# THE RESOLVE PROGRAM

**What if I don't like the outcome of Step 1?**
Appeal to **Step 2** within 30 days and the **RESOLVE Program Administrator** will assign your claim to either a **Mediator** or **Review Panel.** A skilled Mediator will meet with you and a Company official to attempt to resolve the claim (or) your case will be assigned for review by a 5-member Review Panel.

**Does Step 2 cost me money?**
It shouldn't.

**May I bring a lawyer to Mediation or the Review Panel?**
If you so desire, you may bring an attorney with you for mediation. The Review Panel is an internal function and personal appearances are not required.

**How does the Review Panel work?**
From a pool of trained panel members representing employees from all levels of Sterling, four (4) employees will be chosen to join an employment attorney to form a review panel to hear your case. The panel is specifically charged with reviewing evidence and rendering an impartial decision. The panel's decision will be binding on the Company.

**OK, if Step 2 doesn't satisfy me, what do I do?**
Contact the RESOLVE Program Administrator within 30 days. You will be mailed an application for Arbitration.

# THE RESOLVE PROGRAM

Through an elimination process, you and the Company agree on one Arbitrator who will conduct the hearing, listen to both sides and render a decision. This process will include witness testimony, production of evidence, etc. and is subject to The Federal Rules of Evidence. If the decision is in your favor, you may be awarded remedies which may include reinstatement, back-pay, damages, payment of reasonable attorney fees, or any other remedy that a court could provide. The Arbitrator's decision is final and binding on both the employee and the Company.

### Do I need a lawyer for Step 3?

Bringing a lawyer is encouraged, though not required. An arbitration hearing is similar to a court trial with a set of rules and procedures that must be followed. A Company lawyer will normally be present.

### How are the decisions communicated in Steps 2 and 3?

A written document examining the claim and its merit or lack of merit will be provided to both the employee and the Company. If the decision is for the employee and the remedies are awarded, a claim settlement agreement may be required.

### How long does it take to resolve a dispute using this program?

That depends on how many steps you take. However, even if you go all the way to Arbitration, a decision can be reached in months rather than years, as through the judicial (court) system.

| | Judicial System Courtroom | ADR RESOLVE Program |
|---|---|---|
| Average time to resolve the case: | Resolution can take years. | Resolution can be completed in 3-4 months or sooner. |
| Typical time spent in case for personal testimony: | 1 to 4 weeks | 1 to 3 days |
| Location of hearing: | Wherever court is located. | In a location convenient to you. |
| Rules and procedures: | Very technical and varies between courts. Cases can be dismissed before you've had a chance to present your case. | Simple process controlled by minimal rules. All proceedings are clearly outlined. |
| Costs: | Multiple thousands of dollars. | Minimal costs, if any, dependent upon steps taken. |
| Selection of person judging the case: | A judge who may not have employment law experience. A possible jury (of unknown people) selected by the judge and lawyers. | In Step 3 you and the Company select a skilled, experienced employment law Arbitrator. |
| Decisions: | Decisions can be appealed and overturned. | Decision is protected if for you. The Company cannot appeal. |

# RESOLVE
# 1-800-394-4205

The RESOLVE Program excludes interest and it and any warranty and a bond statement it shall be to have within criminal application. See explanation as a employee.

*The RESOLVE Program is subject to the Federal Arbitration Act*

*The RESOLVE Program does not restrict prior to coverage.*

*The RESOLVE Program does not alter the terms of employment as established within the Sterling Jewelers, Inc. employee handbook.*

1004442

# EXHIBIT B

# Lynch, Mike

| | |
|---|---|
| **From:** | Corporate Communications |
| **To:** | Kramer, Alfred; Patton, Ann Marie; Polizos, Angelo; Sutliff, Ann; Kumar, Alok; Fernholz, Barry; Luth, Bill; Scalo, Bob; Mooney, Bill; Contreras, Chris; Smith, Charles; Bowling, Dale; Everett, Doug; Everton, Dave; Gregorio, Dan; Wakeley, Dave; Kennedy-Damiano, Frank; Winokur, Greg; Provenzano, Gordon; Grawunder, Gretchen; Waldmann, Greg; Goldsmith, Ian; Gifford, Joseph; Falta, Joann; Liebler, John; Martin, Judy; Lawson, James; Braunsdorf, John; Obermeyer, Ken; Neider, Kent; Mann, Katy; Morehouse, Kelly; Amato, Lisa; Maxwell, Larry; Silva, Louis; McFarland, Michelle; Molanare, Mike; Lepper, Michael; Sardelli, Mike; Kestin, Michael; Mageras, Nick; Abdallah, Nabil; Bignotti, Perry; Chagini, Peter; Farhand, Ryan; Docekal, Rick; Larue, Ramon; Surmen, Richard; Wellman, Rick; Robinson, Ron; Russell, Ronda; Bosserdet, Susan; McArthur, Sandra; Arshinkoff, Steve; Papapietro, Sher; Almond, Tami; Chmiel, Tim; Kidman, Tod; Owens, Traver; Kennedy, Virginia |
| **Cc:** | Yarris, Brad; Woods, Dave; Grande, John; Velez, Jeanne; Bowers, Liz; Castle, Lisa; Kronick, Paul; Glaser, Robert; Kochanek, Tryna; Bailey, Dave; Lietzow, Jay; Stark, Paul; Roberts, Bill; Bouffard, David; Scott, Debbie; Miller, David; Murray, George; Shapiro, Harry; Steiner, Heidi; Bloch, Ilene; Chudada, John; Greene, Joel; Navis, Jamie; Hamilton, Lynn; Vinnedge, Phil; Dennis, Vicki; Gruse, Barb; Kenny, Bruce; Thompson, Cyndi; Hamak, Dorothy; Dine, Jeff; Kimson, Debbie; McGuire, Dawn; Wester, Dan; Hrabak, Ed; Mackenzie, Ellen; McIntyre, Eric; Schreiner, Harriet; Ehmann, Joy; Quatraro, Joann; Starkey, Jeff; Smith, Leslie; Bucki, Margie; Nutter, Nancy; Lee, Stuart; Pantalone, Sue; Torner, Tammie; Trifiro, Luci; Bischoff, Amy; Schweikert, Adam; Bissett, Bonnie; Gallagher, Brian; Smith, Bob; Burdette Chris; Duchene, Carmene; Brock, Dave; Christoff, Diane; Miller, Dick; Morgan, Dawn; Shaffer, Denise; Stincic, Dale; Swanson, DiAnn; Azer, Ed; Data, Gail; Deutsch, Gaye; McCoy, Larry; Michel, Holly; McNaughton, Isabelle; Beck, Joe; Denning, Jerry; Mix, Jim; Henton, John; Kennelly Jeanette; Petrocci, Jill; Thomas Jeanette; Whitney, Jorene; Valentine, Kevin; Charnes, Lorrie; Choppa, Lisa; Duecker, LaVonne; Fairhead, Lori; Kling, Larry; LaBelle, Laura; Roberts, Lynn; Engler, Marianne; Fasig, Mike; Light, Mark; Lynch, Mike; Mejia, Melinda; Pesich, Melanie; Murphy, Mary Pat; Perduk, Melissa; Weiss, Mario; Williams, Michele; Capatosto, Natalie; Slaynasky, Peter; Davis, Rick; Farrell, Robert; Grigson, Randy; Knapp, Robert; Nerone, Robin; Wellman, Rod; Zivcsak, Ron; Gross, Stacey; Venezia, Steve; Levison, Scott; Shane, Suzanne; Burman, Terry; Cardille, Tom; Kimble, Tom; Klein, Terry; Montalto, William; 9999 Test Store |
| **Subject:** | RESOLVE Program |
| **Date:** | Monday, April 13, 1998 5:13PM |

READ BY:

| EMPLOYEE NAME | DATE | EMPLOYEE NAME | DATE |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

THIS SHOULD BE RETAINED ON FILE UNTIL FURTHER NOTICE
PRINT & FILE IN YOUR STORAGE BINDER UNDER H/R (HUMAN RESOURCES)

**TO:**     All District Managers

**FROM:**   Michael Lynch (Ext. 5593)
            AVP, Employee Relations

**DATE:**   April 13, 1998

**RE:**     Introduction of the RESOLVE Program
            (Alternative Dispute Resolution "ADR")

BACKGROUND:

Please note that the RESOLVE Program which you previewed in February, 1998 will become effective on June 1, 1998. Thorough, "easy-to-use" training kits for your stores will arrive at your base store on or about April 29, 1998. Each kit will include:

Training Guide
Program Pamphlets
New Applications
New Employee Handbooks, and
ADR Agreements for employees hired after 6/1/98.

ACTION STEPS:

As coordinated through Store Operations, within the month of May, 1998, (as soon after Mother's Day as possible) schedule a Managers Meeting. One half hour of this meeting should be dedicated to explain this program to Managers and how they are to introduce the program within their stores before the effective date of 6/1/98.

This approved meeting will replace your Assistant Managers Meeting previously scheduled for June. Brian Gallagher will shift the appropriate payroll from June to May.

DUE DATES:

By May 30, 1998, this program must be communicated by Store Managers to all associates through mini meetings and the instructional RESOLVE Program pamphlet.

QUESTIONS ARE TO BE DIRECTED TO MIKE LYNCH AT EXT. 5593

CCD: 9804172E-H/R



## EXAMPLES OF SOME OTHER COMPANIES THAT USE ADR:

JC Penney

Allstate Insurance

GNC

Home Depot

McDonalds

General Motors

Microsoft

MCI

TRW

Nordstrom

Nike



TRAINING WINDOW:

**April 30 - May 30, 1998**

PROGRAM EFFECTIVE DATE:

**June 1, 1998**

YOUR RESPONSIBILITY:

**Follow the steps on page 2 by June 1, 1998**

THE IMPACT:

**As of 6/1/98**

- **ALL new hires must complete the NEW application;**
- **sign the ADR Agreement;**
- **sign receipt for the NEW Employee Handbook; and**
- **receive a RESOLVE Program pamphlet.**



## THE STEPS:

**1** Add this topic to your agenda for a district meeting with your managers.

### SCHEDULE

**2** Distribute and review prepared training kits with Store Managers.

This includes introductory letter, program pamphlets, a poster, new applications, ADR Agreements (for new hires) and new Employee Handbooks.

### DISTRIBUTE MATERIALS

**3** A. Have managers destroy all existing Employee Handbooks and applications.

B. Managers are to be instructed to update any existing, unused new-hire packets with new Employee Handbooks, RESOLVE Program Pamphlets and ADR Agreements.

### INSTRUCT

**4** Ensure Store Managers review RESOLVE Program pamphlets with current employees by June 1, 1998.

### ENSURE COMPREHENSION

**5** District Manager to return implementation checklist to Employee Relations by June 10, 1998.

### FOLLOW-UP

(see next page) →

2

---



## COMMON QUESTIONS & ANSWERS

*Who is the program for?*

Any current employee who feels that they have been subjected to an unlawful act.

*What do I have to do as a Manager?*

- Inform your employees of the program by distributing the program pamphlet.
- Throw away all existing applications.
- Have applicants use new applications.
- Take old handbooks out of any existing new hire packets and destroy them; replace with new handbook.
- Add ADR Agreements and RESOLVE Program pamphlets to all existing new hire packets.
- All new employees (hired 6/1/98 or after) must sign the ADR Agreement and the acknowledgment page (last page) of the new Employee Handbook.

*What if I have more questions after reading the program pamphlet?*

Call the RESOLVE PROGRAM ADMINISTRATOR at 1-800-594-4205.

*Does this program apply to part-time and seasonal help too?*

Yes, - ALL employees!

5



## ITEMS TO COVER

**RESOLVE Program Pamphlet**
(For all current and new employees)

**New Applications**
(For all new applicants)

**New Employee Handbook**
(For new employees)

**ADR Agreement**
(For new employees only)

**Poster**
(Post in store)

## PRESENTATION POINTS

- Sterling is committed to making continuous improvement.

- Sterling recognizes that workplace disputes between employee and employer occasionally occur, are disruptive and may lead to expensive, time consuming lawsuits.

- Often the results of lawsuits are disappointing for both sides.

- America's court system is back-logged and many disputes are now resolved through mediation or arbitration. Mediation and Arbitration are forms of *Alternative Dispute Resolution.*

- There are 85,000 back-logged cases with the EEOC.

- Lawsuits take 3-5 years on average to resolve.

- Sterling has designed a new program which will assist both the employee and the Company with a faster, more efficient, less costly means of resolving certain workplace disputes.

- The RESOLVE Program is an Alternative Dispute Resolution (ADR) program that is effective June 1, 1998.

- This program can provide all the remedies and awards otherwise available through the court system.

- The RESOLVE program pamphlet contains all of the program details. Please read through it now.

- This program is applicable to current and future employees.

3

# RESOLVE PROGRAM
# IMPLEMENTATION STEPS

## Current Employee

- MINI-MEETING
- PROGRAM PAMPHLET
- POSTER

## New Applicant

- APPLICATION
- ADR AGREEMENT
- NEW HANDBOOK
- PROGRAM PAMPHLET

# RESOLVE PROGRAM

### ALTERNATIVE DISPUTE RESOLUTION (ADR)

## DISTRICT MANAGER TRAINING GUIDE

### FOR INTRODUCTION & IMPLEMENTATION

# STERLING *Jewelers Inc.*

# RESOLVE Program (ADR) Store Manager Checklist



☑ 1. Schedule Mini Meeting with all employees. Distribute Program Brochures.

- All employees need to attend.
- Repair Shop employees to attend (if applicable).

☑ 2. Hang up Store Program poster.

- Review with Employees

☑ 3. Destroy all unused old Applications. Implement use of new Applications.

☑ 4. Update any unused NEW HIRE packets with:

- New Handbooks,

- Resolve Program pamphlets, and

- ADR Agreements.

☑ 5. All new hires on/after 6/1/98 must receive new Employee Handbook; sign new application; sign ADR Agreement and receive Resolve Program Pamphlet.



May 1998

Dear Sterling Manager:

Your District Manager will be introducing a new Sterling program to you today.

This program is effective June 1, 1998 and applicable to all employees.

This program is the result of several years of research and development and will provide a benefit to both employees and Sterling Jewelers Inc.

It is important that you have a good understanding of the program in order to positively present it to all of your employees.

Materials and an implementation checklist will be provided to you today.

Your cooperation and a commitment to the program's successful introduction is required and appreciated.

You may call me directly with any questions at extension #5593.

Yours truly,

Michael D. Lynch
AVP, Employee Relations

MDL/ljl

9804183H/HR
c:/llabell/correspondence/managers/adrltr.doc

---

375 GHENT ROAD   AKRON, OH 44333-4600
(330) 668-5000



# THE RESOLVE PROGRAM

## Alternative Dispute Resolution (ADR)

## RESOLVE
## 1-800-394-4205

### STERLING JEWELERS Inc.

# STERLING JEWELERS Inc.

Sterling's success and momentum is due in part to the continuous improvements made within all facets of our business. As such, Sterling is pleased to offer a program designed to assist both the Company and you in resolving workplace misunderstandings, problems and/or disputes.

Workplace disputes occasionally occur and can lead to lawsuits. Lawsuits are disruptive, involve enormous expense, can take years to resolve and often result in disappointing outcomes.

For these reasons, the "RESOLVE" Program was designed to provide a more efficient way to deal with workplace disputes without going to court! This program involves a multi-step approach for dealing with disagreements over employment actions that an employee believes are unlawful.

This program has many benefits, including:

➣ a fast and economical process;

➣ opportunity for dispute review by a skilled Mediator or Review Panel;

➣ the ability to appeal to an outside Arbitrator; and,

➣ provides all the remedies and awards otherwise available through the judicial system.

On the following pages, you'll find a description of the program, how it works and how to use it.

# THE RESOLVE PROGRAM

## RESOLVE
## ALTERNATIVE DISPUTE RESOLUTION (ADR) PROGRAM HIGHLIGHTS

➣ Effective June 1, 1998

➣ Applicable to all employees.

➣ Provides employee with a fast, fair, private, inexpensive way to handle employment disputes that involve alleged unlawful actions.

➣ Involves 3 Steps:

## STEP I

### Filing a Complaint:

An employee who believes he/she has been subjected to an unlawful employment action, harassment or termination must contact the RESOLVE Program Administrator and complete a RESOLVE Program Complaint Form.

The party must specify in the form how he/she has been subjected to an unlawful action and the specific relief sought. Unless prohibited by law, the claim form must be fully completed, postmarked and sent to the RESOLVE Program Administrator within one (1) year of the alleged unlawful action.

After an investigation, a response (answer) will be postmarked to the employee no later than 30 days after receipt of the complaint form.

If the employee is satisfied with the response, no further action is required.

## THE RESOLVE PROGRAM

A verbal agreement concluding the terms of any settlement will be concluded. Both parties will be equally bound to the terms of the agreement.

If not satisfied by the outcome of Step 1, an employee may proceed to Step 2. An employee must request, in writing, a review of their Step 2 appeal form, which must be postmarked within 30 days of the postmark date of their Step 1 determination.

### STEP 2

#### Appeal For Further Review

**Step 2** allows the employee to appeal for further review if he/she is not satisfied with the outcome of Step 1.

In Step 2, the case is reviewed by the RESOLVE Program Administrator to:

- a skilled outside Mediator

or

- a Substantive Review Panel.

As in Step 1, if the employee is satisfied with the response, no further action is required.

If not satisfied by the outcome of Step 2, an employee may proceed to Step 3. An employee must request, fully complete and return a Step 3 appeal form, which must be postmarked within 30 days of the postmark date of the Step 2 decision form.



## THE RESOLVE PROGRAM

### STEP 3

#### Arbitration

**Step 3** allows the employee to file for neutral and binding arbitration if he is not satisfied with the decision on previous resolution in Step 2.

Step 3 involves a formal hearing which gives the employee and the Company their final legal opportunity. This step utilizes a skilled, neutral Certified Arbitrator from the American Arbitration Association. This independent, neutral third-party was founded in 1926 and helps to resolve tens of thousands of disputes a year.



The Arbitration will take place at a mutually convenient time and location near the site where the complaint arose, and shall be governed by the Federal Arbitration Act, the substantive law of the jurisdiction where the complaint arose, the Notice of Rights for the Resolution of Employment Disputes of the American Arbitration Association, and the Resolve Program Arbitration Rules.

Specific rules for Step 3 Arbitration will be provided upon request or at the time the employee begins the Step 3 process.

## THE RESOLVE PROGRAM

The Company will pay for the Arbitrator's fees.

The Arbitrator will hear the case and render a decision. The Arbitrator can award all remedies available as provided by law. The decision of the Arbitrator will be final and binding upon the employee and the Company.

Arbitration is the final step. Neither party may file a lawsuit instead of using the RESOLVE Program or accepting the Arbitrator's final decision.

The company prohibits any retaliation against you for using this program.

### RESOLVE
### 1-800-394-4205

## THE RESOLVE PROGRAM

### WHAT IS COVERED UNDER THE RESOLVE PROGRAM

The *RESOLVE* Program applies to only these types of claims:

➤ Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other protected basis.

➤ Retaliation for filing a protected claim (such as Workers' Compensation) or exercising protected rights under any statute.

➤ Violations of federal, state, county, local or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment.

➤ Personal injuries arising from an employment decision or action except those covered by Workers' Compensation.

➤ Breach of any express or implied contract, breach of a covenant of good faith and fair dealing, claims of wrongful termination or constructive discharge, or claims for incentives (such as bonuses).

➤ Embezzlement, theft, restitution, trade secrets/propriety information, other willful misconduct.

### WHAT IS NOT COVERED

➤ Claims for Workers' Compensation benefits.

➤ Criminal charges.

# THE RESOLVE PROGRAM

➤ Claims for unemployment compensation benefits.

➤ Claims for employment decisions/actions NOT related to discrimination, harassment or violations of any law.

## QUESTIONS AND ANSWERS

**If my dispute is covered, is it necessary that I use this program?**
All employees are required to use the program to resolve applicable disputes.

**If I am terminated, can I use the RESOLVE Program?**
Yes, but only claims involving alleged unlawful actions are subject to the RESOLVE Program.

**If I quit because I've been sexually harassed, do I have to use the program?**
Absolutely. The RESOLVE Program covers harassment.

**What is the first step? How do I get started with a claim?**
Within 1 year of any action, you must call 1-800-394-4205 to contact the RESOLVE Program Administrator and arrange to complete a *RESOLVE Program Claim Form.* In Step 1, an Employee Relations Specialist will interview you and investigate your claim. The faster you call, the faster the resolution.

# THE RESOLVE PROGRAM

**What if I don't like the outcome of Step 1?**
Appeal to Step 2 within 30 days and the RESOLVE Program Administrator will assign your claim to either a Mediator or Review Panel. A skilled Mediator will meet with you and a Company official to attempt to resolve the claim (or) your case will be assigned for review by a 5-member Review Panel.

**Does Step 2 cost me money?**
It shouldn't.

**May I bring a lawyer to Mediation or the Review Panel?**
If you so desire, you may bring an attorney with you for mediation. The Review Panel is an internal function and personal appearances are not required.

**How does the Review Panel work?**
From a pool of trained panel members representing employees from all levels of Sterling, four (4) employees will be chosen to join an employment attorney to form a review panel to hear your case. The panel is specifically charged with reviewing evidence and rendering an impartial decision. The panel's decision will be binding on the Company.

**OK, if Step 2 doesn't satisfy me, what do I do?**
Contact the RESOLVE Program Administrator within 30 days. You will be mailed an application for Arbitration.

# ▸THE RESOLVE PROGRAM

Through an elimination process, you and the Company agree on one Arbitrator who will conduct the hearing, listen to both sides and render a decision. This process will include witness testimony, production of evidence, etc. and is subject to The Federal Rules of Evidence. If the decision is in your favor, you may be awarded remedies which may include reinstatement, back-pay, damages, payment of reasonable attorney fees, or any other remedy that a court could provide. The Arbitrator's decision is final and binding on both the employee and the Company.

## Do I need a lawyer for Step 3?
Bringing a lawyer is encouraged, though not required. An arbitration hearing is similar to a court trial with a set of rules and procedures that must be followed. A Company lawyer will normally be present.

## How are the decisions communicated in Steps 2 and 3?
A written document examining the claim and its merit or lack of merit will be provided to both the employee and the Company. If the decision is for the employee and the remedies are awarded, a claim settlement agreement may be required.

## How long does it take to resolve a dispute using this program?
That depends on how many steps you take. However, even if you go all the way to Arbitration, a decision can be reached in months rather than years, as through the judicial (court) system.

|  | Judicial System Courtroom | ADR RESOLVE Program |
|---|---|---|
| Average time to resolve the case: | Resolution can take years. | Resolution can be completed in 3-4 months or sooner. |
| Typical time spent in case for personal testimony: | 1 to 4 weeks | 1 to 3 days |
| Location of hearing: | Wherever court is located. | In a location convenient to you. |
| Rules and procedures: | Very technical and varies between courts. Cases can be dismissed before you've had a chance to present your case. | Simple process controlled by minimal rules. All proceedings are clearly outlined. |
| Costs: | Multiple thousands of dollars. | Minimal costs, if any, dependent upon steps taken. |
| Selection of person judging the case: | A judge who may not have employment law experience. A possible jury (of unknown people) selected by the judge and lawyers. | In Step 3 you and the Company select a skilled, experienced employment law Arbitrator. |
| Decisions: | Decisions can be appealed and overturned. | Decision is protected if for you. The Company cannot appeal. |

# RESOLVE
## 1-800-394-4205

The RESOLVE Program became effective 5/1/93 and is a mandatory two tier dry Alternative Dispute Resolution (ADR) process applicable to all Sterling Jewelers Inc. employees.

The RESOLVE Program is subject to the Federal Arbitration Act.

The RESOLVE Program does not rescind political contracts.

The RESOLVE Program does not alter the terms of employment as established within the Sterling Jewelers Inc. Employee Handbook.

1004442

# The RESOLVE Program

## Alternative Dispute Resolution (ADR)

**• Effective June 1, 1998  • Applicable to All Employees**

The RESOLVE Program was designed to provide a more efficient way to deal with serious workplace disputes involving alleged unlawful employment actions, without going to court. This multi-step program provides:

**• A FAST, PRIVATE, ECONOMICAL PROCESS**

**• ALL THE REMEDIES AND AWARDS OTHERWISE AVAILABLE THROUGH THE JUDICIAL SYSTEM**

An informational program pamphlet may be obtained through your Store Manager or by calling **1-800-394-4205**.

Employees who feel that they have been subjected to an unlawful employment action must contact the RESOLVE Program Administrator to file a complaint.

**THIS IS A MANDATORY AND BINDING PROGRAM.**

# RESOLVE

## 1-800-394-4205



STERLING JEWELERS INC.

# EXHIBIT C

# THE RESOLVE PROGRAM

## Alternative Dispute Resolution (ADR)

**• Effective June 1, 1998 • Applicable to All Employees**

The RESOLVE Program was designed to provide a more efficient way to deal with serious workplace disputes involving alleged unlawful employment actions, without going to court. This multi-step program provides:

**• A FAST, PRIVATE, ECONOMICAL PROCESS**

**• ALL THE REMEDIES AND AWARDS OTHERWISE AVAILABLE THROUGH THE JUDICIAL SYSTEM**

An informational program pamphlet may be obtained through your Store Manager or by calling **1-800-394-4205**.

Employees who feel that they have been subjected to an unlawful employment action must contact the RESOLVE Program Administrator to file a complaint.

**THIS IS A MANDATORY AND BINDING PROGRAM.**

# RESOLVE
## 1-800-394-4205



STERLING JEWELERS INC.

# EXHIBIT D

Internal Audit Department
Store Audit Paperless Application
Retail Store One Day Audit
Revised May 2005 • Version 6 • PY2006

STORE AUDIT DATA INITIALIZATION

| | | |
|---|---|---|
| AUDIT START DATE: 7/26/2005 | | AUDIT END DATE: 7/28/2005 |
| STORE NAME & NO: KAY JEWELERS | 0271 | MALL NAME: WIREGRASS COMMONS MALL |
| DIVISION NAME: KAY DIVISION | | CITY AND STATE: DOTHAN, AL |
| AUDIT DIRECTOR: TOM KIMBLE | | AUDITOR: BRAD L. YARRIS |
| AUDIT MANAGER: DENNIS MURPHY | | INVESTIGATOR: KARIN GIBBS |
| STORE MANAGER: JOYCE FREEMAN | September-01 | DISTRICT MANAGER: DUANE SALLIS |
| STORE ASST MGR: NA | | REGIONAL OP VP: BILL MOONEY |
| MGMT AT CLOSE: YES | | OPERATIONAL VP: JOE BECK |

INTRODUCTION                                    Page 1

Sterling Jewelers Inc.
Retail Store One Day Audit
KAY JEWELERS # 0271

| A B | | Wp. Ref. | Policy Ref. | Sample Size | Exept % If applic. | S | U | Amounts Dates | COMMENTS/FOLLOW-UP |
|---|---|---|---|---|---|---|---|---|---|
| 8. Is any showcase cracked or broken? (NO POINT VALUE - Reilly Store Planning) | | | | | NA | O | | | |
| 9. If the store has a camera system, is it working properly? (NO POINT VALUE) | | | | | NA | NA | — | | |
| **Miscellaneous** | | | | | | | | | |
| 1. Was Auditor's ID requested upon arrival on first day? | | | | | NA | O | — | | |
| 2. Was Auditor's employment verified with home office? | | | | | NA | O | — | | |
| 3. Does mgmt understand the necessity to report all incidents, including attempted thefts and BAD GRABS to the DM and Loss Prev within 24 hours? | | | SM 1-10 | | NA | O | | | |
| 4. Are fire extinguishers charged? | | Date Last Changed | | | NA | — | X | Nov-03 | CHARGED EVERY YEAR |
| 5. Is a first aid kit available in the store? | | | SM 1-9 | | NA | O | — | | |
| 6. Is the refund policy posted in the store? | | | | | NA | O | — | | |
| 7. Does the store have the updated Workers' Comp Policy in their personnel manual? | | | | | NA | O | | | |
| 8. Does store have their Workers' Comp "safety poster" posted in the back room? | | | SM 1-9 | | NA | — | X | | |
| 9. Does mgmt understand how to use the TIP Line and the poster clearly posted? | | | | | NA | O | — | | |
| 10. Does the store have their 5-in-1 Labor Law Poster posted? (Covers Fair Employment, Minimum Wage, OSHA, Family and medical leave, and the Prohibition of Lie Detectors.) | | | | | NA | O | | | |
| 11. Does the store have Sexual Harassment poster posted? | | | | | NA | O | | | |
| 12. Does the store have their Resolve Program Poster posted? | | | | | NA | O | | | |
| 13. Does the store have their Bounty Poster posted? | | | | | NA | O | — | | |
| 14. Is the Drug Free Workplace Poster posted? | | | | | NA | O | — | | |
| 15. Does the store have the Human Resources Poster posted? | | | | | NA | O | | | |
| 16. Is the Zero Tolerance Poster posted? | | | | | NA | O | | | |

Sterling Jewelers Inc.
Retail Store One Day Audit
KAY JEWELERS # 0271

| A B | | Wip Ref. | Policy Ref | Sample Size | Excpt. % if applic. | S | S | U | Amounts Dates | COMMENTS/FOLLOW-UP |
|---|---|---|---|---|---|---|---|---|---|---|
| PERSONNEL AND SECURITY SCORING | | | | | | | | | | |
| • 17. Are national "Do-Not-Call" programs being adhered to? | | Possible | 20 | | NA | O | | ─── | 18.2 91% | |

# Store Audit Paperless Application
## Procedural Compliance Audit Program
To be used with the Inventory Module Workbook (IA only)

Revised April 2006 - Version 3.0 - FY2007

| | | | | | |
|---|---|---|---|---|---|
| | 11/6/2006 | | | 11/7/2006 | |
| | KAY | 0271 | | | WIREGRASS COMMONS MALL |
| | KAY | A | | | DOTHAN, AL |
| | TOM KIMBLE | | | | MELISSA LANNI |
| | BRAD L. YARRIS | | | | AARON WICHANN |
| | NONE | | 9/7/01 | | DUANE SALLIS |
| | AMY GOLDEN | | | | MICHELLE MCFARLAND-SMITH |
| | YES | | | | JOE BECK |
| | | | | | TWO DAY |

In the following table enter OD for a One Day Audit and IA for an Inventory Audit/One Week Audit in the audit section column next to each section that you are auditing or reauditing. If applicable, enter the previous score for reaudit sections.

| AUDIT SECTIONS | SECTIONS | SCORES | PREVIOUS |
|---|---|---|---|
| IA | CASH | 100 | 78 |
| IA | MDSE | 100 | 98 |
| IA | AR | 100 | 100 |
| IA | L&R | 100 | 79 |
| IA | P&S | 100 | 91 |

**Sterling Jewelers Inc.**
Procedural Compliance Audit Program
KAY § 0271

| A  B | | Wp. Ref. | Policy Ref SM I-9 | Sample Size | Except % if applic. | S | U | Amounts/ Dates | COMMENTS/FOLLOWUP |
|------|---|---------|---------|---------|---------|---|---|---------|---------|
| * 6. Is a first aid kit available in the store? | | | | | | | | | |
| * 8. Is the refund policy posted in the store? | | | | NA | O | | | | |
| * 7. Are the following posters properly posted the backroom? | | | | NA | | | X | | ORDER THRU JANITA ZAPPOLA- WORKMAN'S COMP |
|   Workers Comp Safety Poster | | | N | | | | | | |
|   TIPS Line Poster | | | Y | | | | | | |
|   5 In 1 Labor Law Poster | | | Y | | | | | | |
|   Sexual Harassment Poster | | | Y | | | | | | |
|   Resolve Poster | | | Y | | | | | | |
|   Bounty Poster | | | Y | | | | | | |
|   Drug Free Workplace Poster | | | Y | | | | | | |
|   Human Resources Poster | | | Y | | | | | | |
|   Zero Tolerance Poster | | | Y | | | | | | |
|   USERRA Poster (New) | | | N | | | | | | |
| * 8. Are national "Do-Not-Call" programs being adhered to? | | | | NA | O | | | | ORDER THRU LAURA LABELLE IN HUM RES |
| * 9. Is the following sales media properly retained per the company's record retention policies? | | | | NA | | | X | | |
|   Sales Slips - One Year of Daywork | | | Y | | | | | | |
|   Layaway/Special Order Forms - One Year for Cancellations/Conversions | | | N | | | | | | |
|   Layaway/Special Order Forfeitures - Until Refunded | | | Y | | | | | | |
|   Repair Tickets - Two Years | | | Y | | | | | | |

34%

3/12/2006                                  Audit Program

12

# EXHIBIT E

November 14, 2006

Evelyn Freeman
106 Longleaf Dr.
Dothan, AL 36303

Re:    *RESOLVE Program*
       *Claim Form Request*

Dear Evelyn:

Enclosed you will find a RESOLVE program claim form and brochure. This program covers claims of alleged "<u>unlawful</u>" conduct and activity (see page 6 of the brochure). If applicable to your client, please complete this form thoroughly and return to me in the self-addressed enveloped.

Upon receipt of your completed claim form, the Step 1 investigative process will begin. Within 30 days of the receipt of your claim a response will be forwarded to you at the above address.

Please feel free to telephone me with any questions at 1-800-394-4205.

Sincerely,


Joseph L. Spagnola
Manager, RESOLVE Program


Enclosures

# EXHIBIT F

Rec 1/9/07
to Steve Becker

JOHN E. BYRD
ATTORNEY AT LAW
211 WEST MAIN STREET, SUITE 1
DOTHAN, ALABAMA 36301

Phone (334) 794-0759
Fax (334) 792-0161

January 5, 2007

E-MAIL ADDRESS:                                                          MAILING ADDRESS:
bblbjlaw@centurytel.net                                                   P.O. BOX 536
                                                                          DOTHAN, ALABAMA 36302
Mr. Mark Light
President and CEO
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333-4600

RE:   Evelyn Freeman - former employee
      Store # 271- Wiregrass Commons Mall
      Dothan, Alabama

Dear Mr. Light:

Please be advised that I represent the above shown subject. I am writing you to inform you that Ms. Freeman was wrongfully terminated from your employment and appeal to you to put her back to work in the position she was in to avoid the possibility of litigation. It appears the claims against her were contrived and were for the purpose of getting her job or removing her from her job. Ms. Freeman's denial of the truth of the claimed events and the true facts were, apparently, not considered. I believe Ms. Freeman was an extremely valuable employee to your company and that the claims against her were untrue.

Ms. Freeman had worked with you company for approximately ten (10) years lacking a few months. She has advanced from assistant to Store Manager. She loved working for your company, gave extra effort in her work and was rewarded by your company for her performance. She is a mature, sincere and deserving person, well worthy of your special consideration. That is the purpose of this letter. Ms. Freeman has lost a lot by this termination, including, annual bonus, promised benefits, medical benefits, life insurance, potential stock funds, potential 401K growth and other benefits she may have been entitled to for her service.

I urge you to look into this matter. Ms. Freeman had much rather go back to work for you than consider potential legal claims such as wrongful termination, discrimination, ERISA claims and probably others. Would you investigate this matter and let me hear from you at your earliest convenience.

Very truly yours,

John E. Byrd

JEB/th

# EXHIBIT G



January 16, 2007

John E. Byrd
Attorney at Law
211 West Main Street, Suite 1
Dothan, Alabama 36301

RE: *Evelyn Freeman*

Dear Mr. Byrd:

I am in receipt of your letter dated January 5, 2007 that you forwarded to Mark Light. Please direct any/all future correspondence to my attention.

I have reviewed the record of your client, which includes numerous disciplinary counselings, as well as performance appraisals in which she was rated below expectations.

Your client was terminated for a legitimate, non-discriminatory reason. She is well aware that there was an investigation regarding her unacceptable behavior towards her employees. She spoke directly to an employee relations specialist about the specifics.

The decision is not negotiable.

Your client may not have informed you but she is bound to a mandatory and binding alternative dispute resolution (ADR) program, RESOLVE, which she is very familiar with. In fact, she requested a Step 1 Claim form on November 14, 2006 but did not file a claim. Without exception, state and federal courts across the USA have strictly enforced the provisions of this program.

Thus, if your client wishes to pursue any legal claims, this is the required forum to pursue such.

Yours truly,

Michael D. Lynch
VP, Employee Relations

MDL/ljl

375 GHENT ROAD   AKRON, OH 44333-4600
(330) 668-5000

# EXHIBIT H



# STERLING JEWELERS Inc.

# THE RESOLVE PROGRAM

Alternative Dispute Resolution (ADR)

# Step 1

07271 AD03

## 1-800-394-4205

| Step 1 | CLAIM FORM |
|---|---|

Directions: You must submit your claim in this format in order for it to be accepted. Once completed (please print or type), return to Sterling Jewelers Inc. in the enclosed envelope postmarked within one (1) year of the date of the alleged unlawful activity/conduct. For assistance call 1-800-394-4205.

**EMPLOYEE DATA**

| Evelyn Joyce Freeman | 836055 | 1996 |
|---|---|---|
| Name | Employee Number | Date of Hire |

| Store Manager, Kay Jewelers | 271 | November 2, 2006 |
|---|---|---|
| Position (last) | Location Number | Last Date Worked (If applicable) |

## A. EXPLAIN CLAIM

1. **Describe the unlawful activity/conduct that you allege you have been subjected to:**

My employment as store manager of Kay Jewelers', Dothan, Alabama Store was terminated on November 2, 2006. I was told this was because I had referred to one of my staff members as "promiscuous", and because I had made sexual advances toward other members of my staff.

These accusations, which I emphatically and categorically deny, were apparently taken at face value by those who made the decision to terminate my employment. No regard was given to the bizarre nature of these accusations. I am old enough to be the grandmother of all of the members of my staff. Only one of my staff is even of the opposite sex. The individual who made the allegations of sexual advances was not specified to me, nor was the exact nature of the allegation made known to me. No reasonable person could fail to seriously question the

(USE REVERSE SIDE IF MORE SPACE IS REQUIRED)

2.    What laws were violated?

Alabama common law governing outrage, age discrimination, defamation, and

promissary estoppel; Section 25-1-21 et seq.  (Code of Alabama 1975); Employee

Retirement Income Security Act, 29 U.S.C.A. Section 1132 et seq; and possibly

other state and federal laws.

3.    When did this begin?    Unknown                    Unknown
                            Date            Time       Location

4.    When did this end?    11/02/06    1:30p.m.    Dothan, Alabama
                            Date            Time       Location

B.    Identify witnesses and what they have personally observed or experienced:

Name                    Address                Phone #

Tom Parks              Sterling Jewelers          Unknown

Observation/Experiences:  Mr. Parks relayed to me the substance of the allegation

that I referred to one of my staff members as "promiscuous".

Name                    Address                Phone #

Janie Boico           Sterling Jewelers          Unknown

Observation/Experiences:  Ms. Boico relayed to me the substance of the allegation

that I had made sexual advances toward a member of my staff.

C.  Did you report your claim to any member of Sterling Jewelers Inc. management? (If yes, cite to whom, when, and where your reported the unlawful activity.)

| Name and Title | Date Reported | Where |
|---|---|---|
| Mark Light, President & CEO | 01/05/07 | Akron, Ohio via U.S. Mail |

D.  Provide names of employees (current or ex-employees) who have experienced similar activity/conduct (if applicable).

| Name and Title | What did they experience? |
|---|---|
|  |  |

## H. EVIDENCE

Do you have documents/recordings/photographs/statements or other evidence to support your allegations? If so, please submit copies with this claim and list them below.

Personal journal entries from 07/13/06 through 11/02/06; most recent award (2005 Consistent Sales Performer Award). These documents will be provided; however, request is hereby made for you to first provide me with all documentation, in whatever form, of the substance of the allegations that I referred to a staff member as "promiscuous"; the substance of the allegation I made sexual advances to my staff; all prior disciplinary counselings concerning myself; and all performance appraisals in which I was rated below expectation.

## I. SIGN

Under penalty of perjury, I do hereby attest that the information I have provided is true. I understand that upon Sterling Jewelers Inc.'s receipt of this claim, an investigation will occur and my cooperation is required. I may be asked to provide additional information. I will receive a written response within 30 days of Sterling Jewelers Inc.'s receipt of my claim.

_Evelyn Joyce Freeman_                    2/12/07
Claimant's Signature                       Date

# EXHIBIT I

# THE RESOLVE PROGRAM
Alternative Dispute Resolution (ADR)

March 14, 2007                                        [DHL 2nd DAY DELIVERY]

Evelyn Freeman
C/O Joseph W. Lewis, Esq.
211 West Main Street, Suite 1
Dothan, Alabama 36301

Re:     *RESOLVE Program*
        *Claim No.: 07271AD03*

Dear Ms. Freeman:

The following is in response to your RESOLVE Program Claim Form, which was received on February 16, 2007 ("Claim"). An investigation was conducted including, but not necessarily limited to, a review of your Claim, your personnel file, and written statements including those submitted by you. In addition, RESOLVE has contacted each of the individuals you list as witnesses. With respect to your RESOLVE Step 1 Claim, please note the following findings.

*Findings:*

Your Step 1 Claim references the allegations reported by your store employees to Human Resources in July of 2006. As you are aware, you were issued a written counseling at the conclusion of the investigation. However, RESOLVE has learned that your termination of employment occurred not because of the initial allegation, but instead, when Human Resources confirmed what multiple employees had reported subsequent to your disciplinary action.

In fact, Human Resources conducted a second investigation in October of 2006 and discovered that multiple employees had confirmed that you made the statement, "I better watch what I say or someone might contact HR." Furthermore, store employees informed Human Resources that their hours were reduced for reasons unrelated to a business decision. This was confirmed through the Company's electronic time system (ETS).[1] Consequently, the decision was made to terminate your employment.

---

[1] One employee believed to be retaliated against when hours were reduced to approximately ten hours. Another employee witnessed you state that you were planning to cut an employee's hours to force resignation.

Sterling Jewelers Inc.
375 GHENT ROAD · AKRON, OH 44333-4600

Evelyn Joyce Freeman
RESOLVE Claim #: 07271AD03
March 14, 2007
Page 2 of 2

Nevertheless, RESOLVE has contacted each of the employees listed in your Claim Form to ascertain whether your allegations could be substantiated. No evidence of unlawful activity was discovered, but instead, each of these employees confirmed what had previously been reported to Human Resources. As such, the RESOLVE investigation has concluded that your employment was terminated for legitimate and nondiscriminatory reasons.

*Decision/Recommendation(s):*

The RESOLVE investigation did not discover any unlawful activity on the part of the company in connection with your termination of employment. Accordingly, there is no basis to grant any relief under your Claim; therefore, your requested remedy is hereby denied.

According to the RESOLVE Program Rules, if you are not satisfied with the outcome of Step 1, you may proceed to Step 2. You must request, fully complete and return a Step 2 appeal form which must be postmarked within 30 days of the Step 1 determination.

If you have any questions about the RESOLVE process, please contact the Program Administrator at 1-800-394-4205.

Very truly yours,

Joseph L. Spagnola
Manager, RESOLVE Program

# EXHIBIT J

**LAW OFFICES**

JOHN E. BYRD, JR., JOSEPH W. LEWIS & DAVID A. JONES
211 WEST MAIN STREET, SUITE 1
DOTHAN, ALABAMA 36301

Phone (334) 794-0759
Fax (334) 792-0163

RECEIVED ... ... ... 2007

JOHN E. BYRD, JR.
JOSEPH W. LEWIS
DAVID A. JONES

April 12, 2007

MAILING ADDRESS:
P.O. BOX 536
DOTHAN, ALABAMA 36302

Mr. Joseph L. Spagnola
Manager, RESOLVE Program
Sterling Jewelers, Inc.
375 Ghent Road
Akron, OH 44333-4600

RE:   Evelyn Freeman - Claim # 07271AD03
       Resolve Program

Dear Mr. Spagnola:

Please find enclosed the Step 2 Appeal Claim Form completed and signed
by my client in the above styled case.

Very truly yours,

Joseph W. Lewis

JWL/th

Sterling Jewelers Inc.
# RESOLVE PROGRAM
Alternative Dispute Resolution

| Step 2 | APPEAL CLAIM FORM |
|---|---|

**Directions:** Complete this form (please print or type) and return to Sterling Jewelers Inc. in the enclosed envelope. For assistance call 1-800-394-4205.

A. EMPLOYEE DATA

Evelyn Joyce Freeman
Name

836055
Employee Number

1996
Date of Hire

Store Manager, Kay Jewelers
Position (last)

271
Location Number

October 31, 2006
Last Date Worked
(If applicable)

B. EXPLAIN CLAIM

1. Explain why you disagree with the Step 1 finding:

In my first disciplinary call in July 2006, I was specifically told not to retaliate in any way, and I was very careful to adhere to this. I cut two part-time employees' hours in order to accommodate a full-time employee, Amy Jackson, who transferred to my store from Orlando. Ms. Jackson, as a full-time employee, was required to have at least 30 hours per week. I had been asked by my district manager if I could take Ms. Jackson as a full-time employee. However, I wanted Ms. Jackson as an employee because I had received a favorable recommendation of her. I would add that one of the part-time employees whose hours I cut was chronically absent, and would do her school work while at work in the store.

I categorically deny that I ever made the statement you refer to in your letter of March 26, 2007 that I had "better watch what I say or someone might contact HR."

C. Cite additional facts for appeal consideration.

D. List additional witnesses who have personal knowledge.

Amy Christine Golden , Kristen Beckham, Carl McGinnis II, Robynne Knew, Amy
Devane, Amy Jackson, Duane Sallis, Tom Parks, Janie Boico , and Barbara Estes.

E. SIGN

Under penalty of perjury, I do hereby attest that the information I have provided is
true. I understand that upon Sterling Jewelers Inc.'s receipt of this Appeal Claim
Form my cooperation is required and I may be asked to provide additional
information.

Employee Signature                                   Date
                                                     4-12-07

# EXHIBIT K

# THE RESOLVE PROGRAM
## Alternative Dispute Resolution (ADR)

[SENT VIA DHL 2ND DAY DELIVERY]

August 9, 2007

Evelyn Freeman
C/O Joseph W. Lewis, Esq.
211 West Main Street, Suite 1
Dothan, Alabama 36301

Re:  *Evelyn Freeman*
*RESOLVE Claim No.: 07271AD03*

Dear Evelyn:

As you are aware, the RESOLVE Panel convened on August 9, 2007 to review your Claim. The Panel reviewed all of the evidence and documentation submitted by both you and the company.

The Panel contacted you with specific questions—thus affording you another opportunity to present any additional evidence to support your Claim. Nevertheless, the Panel found that Sterling has not acted in an unlawful manner and upheld the decision communicated to you in the Step 1 Finding Letter. In arriving at their decision, the Panel reviewed polling questions and unanimously found no evidence of unlawful activity involving your employment. Your remedy request has therefore been denied.

You may appeal to Step 3 binding Arbitration by contacting me and fully completing a Step 3 Claim form within 30 days of the date of this letter. This final step of the RESOLVE Program involves specific RESOLVE Program and American Arbitration Association rules. Be advised that Step 3 is a formal process subject to the Federal Rules of Evidence and the Federal Rules of Civil Procedure. An attorney will represent Sterling. Moreover, both parties may file dispositive motions and pursue all remedies and awards otherwise allowable within a court of law for the applicable claim. Pursuant to the terms of the RESOLVE Program, the Arbitrator's decision is final and binding. Please feel free to call me with any questions at 1-800-394-4205.

Best Regards,

*Joseph L. Spagnola*

Joseph L. Spagnola
Manager, RESOLVE Program

Sterling Jewelers Inc.
375 GHENT ROAD • AKRON, OH 44333-4600

# EXHIBIT 2

1 of 1 DOCUMENT

WAYLAND HYDE, Plaintiff, vs. STERLING JEWELERS INC., Defendant.

CASE NO. 5:06-cv-02161

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

*2006 U.S. Dist. LEXIS 81755*

November 8, 2006, Decided
November 8, 2006, Filed

COUNSEL: [*1] For Wayland Eric Hyde, Plaintiff: Thomas C Loepp, Maistros & Loepp, Stow, OH

For Sterling Jewelers Inc , Defendant: Stephen S Zashin, Robert W Hartman, Zashin & Rich, Cleveland, OH.

JUDGES: James S Gwin, UNITED STATES DISTRICT JUDGE

OPINION BY: James S Gwin

OPINION:

[Resolving Doc No 6]

JAMES S GWIN, UNITED STATES DISTRICT JUDGE:

The Plaintiff, Wayland Hyde, originally brought suit in the Summit County, Ohio Court of Common Pleas, alleging violations of the Family Medical Leave Act and intentional infliction of emotional distress [Doc 1.] The case was subsequently removed to this Court on September 7, 2006, pursuant to *28 U.S.C § 1441(a) Id* On September 19, 2006, the Defendant then filed the current motion seeking to stay all proceedings in this court because the Plaintiff's claims are subject to mandatory dispute resolution [Doc 6.] For the reasons discussed below, the Court GRANTS the Defendant's motion

I Background

In November 1987, Plaintiff Hyde began employment with the Defendant as a jeweler During the course of the Plaintiff's employment, the Defendant instituted a mandatory dispute resolution program called RESOLVE [*2] [Docs 6, 7] Pursuant to the terms of this program, that became effective for all employees on June 1, 1998, all disputes alleging unlawful behavior between the Defendant and its employees are subject to a mandatory three-step dispute resolution process. *Id* Specifically, the procedure consists of one level of internal review, followed by outside mediation or review by a five-member Review Panel and finally binding arbitration *Id.* With respect to the program's arbitration phase, the program explicitly states that "[a]rbitration is the final step Neither party may file a lawsuit instead of using the RESOLVE program or accepting the Arbitrator's final decision " [Doc 6, Exhibit A ]

Upon adopting the RESOLVE program in 1998, the Defendant publicized the program by distributing written materials to its Regional Repair Managers [Doc 6.] The Plaintiff became a Regional Repair Manager in 1993, and therefore had "primary responsibility for publicizing RESOLVE to all district managers, store managers and employees under his charge " *Id* After the Defendant adopted the RESOLVE program, the Plaintiff continued to work for the Defendant for more than eight years [*3] *Id* The Plaintiff did not, however, sign any form expressing his agreement to be bound by the terms of the RESOLVE program *Id* On or about June 2, 2006, the Plaintiff did file a RESOLVE claim and has subsequently appealed the initial determination made under the program. *Id* He subsequently abjured the RESOLVE program and brought this action

II. Discussion

Because this case concerns an agreement to arbitrate, the Federal Arbitration Act governs the case. 9 U.S.C. § 1. et seq. Agreements to arbitrate employment disputes are generally enforceable under the Federal Arbitration Act, 9 U.S.C. § 1. et seq. The Federal Arbitration Act embodies "the strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v Byrd. 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). The Act seeks to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter. 470 U.S. at 219; Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 932 (6th Cir. 1998). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district [*4] courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter. 470 U.S. at 218.

In deciding whether to order arbitration, courts consider four principle issues: (1) whether the parties agreed to arbitrate the dispute; (2) the scope of the arbitration agreement; (3) if federal claims are asserted, whether Congress intended arbitration to govern the claims, and (4) if only some claims are arbitrable, whether to stay the proceedings pending arbitration. Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). Applying these standards here, the only contested issue is whether the parties agreed to arbitrate their disputes. Ultimately, the Court concludes that the parties did agree to arbitration.

In his opposition to the Defendant's motion to stay court proceedings pending arbitration, the Plaintiff Hyde says that he could not agree to submit this dispute to arbitration [Doc. 7]. Specifically, the Plaintiff argues that his refusal to sign any form expressing his agreement to be bound by the terms of the RESOLVE program is dispositive because "absent a signature, Hyde [*5] is not bound or barred from filing suit." Id. In support of this proposition, the Plaintiff notes that other employees explicitly agreed to be bound by the RESOLVE program by executing "RESOLVE Program Alternative Dispute Resolution Arbitration Agreement forms," but that he refused to execute such an agreement. Id. Additionally, the Plaintiff notes that in prior cases addressing the Defendant's RESOLVE program, the Defendant itself has argued that an employee's execution of an explicit arbitration agreement form is conclusive evidence that the parties agreed to arbitration. Id. Significantly, however, the Plaintiff is unable to cite any case law supporting his argument that execution of a document explicitly agreeing to be bound by arbitration is required in order for an employee to be bound by the terms of a dispute resolution program such as RESOLVE.

Under Ohio law, a contract exists where there is (1) mutual assent, (2) an offer and acceptance of the offer, and (3) consideration. See, e.g., Nilavar v. Osborn. 127 Ohio App. 3d 1, 711 N.E.2d 726. 732 (Ohio Ct. App. 1998). In this case, the Defendant clearly extended an offer to all of its employees through its promotion [*6] of the RESOLVE program. Accordingly, the question is whether the Plaintiff evidenced his intent to accept that offer. Clearly, resolution of this issue would be simple if the Plaintiff had in fact signed a form stipulating his agreement to be bound by the RESOLVE program's terms. However, the Court does not find that the Plaintiff's failed to execute such a form dispositive.

Here, the Plaintiff continued to work for the Defendant for more than eight years after the Defendant adopted the RESOLVE program [Docs. 6, 7]. In light of the fact that the Plaintiff himself was responsible for promoting the adoption of the RESOLVE program, and was therefore intimately familiar with its terms, such continued employment clearly seems an implicit acceptance of the Defendant's offer. Indeed, in a remarkably similar situation the Northern District of Ohio found, in Dantz v. Apple Am. Group. LLC, that under Ohio law an employee manifested her assent to an arbitration agreement through her continued employment with the employer after the adoption of the arbitration program. 277 F.Supp.2d 794, 800-801 (N.D. Ohio 2003). Moreover, in the instant case the Plaintiff has already [*7] participated in the RESOLVE program by voluntarily submitting his claims for review. Accordingly, the Court finds that sufficient evidence exists to establish that the Plaintiff did intend accept the Defendant's offer and is in fact bound by the terms of the RESOLVE program.

III. Conclusion

As described above, the Court finds that the parties did agree to arbitrate the dispute at issue in this case. Accordingly, the Court GRANTS the Defendant's motion to stay all proceedings pending arbitration.

IT IS SO ORDERED

2006 U S  Dist  LEXIS 81755, *7

UNITED STATES DISTRICT JUDGE

Dated: November 8, 2006

s/ *James S  Gwin*

# EXHIBIT 3

1 of 1 DOCUMENT

KATHLEEN JOHNS, Plaintiff, v. STERLING JEWELERS, INC., Defendant.

CIVIL CASE NO. 06-14327

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MICHIGAN, SOUTHERN DIVISION

*2006 U.S. Dist. LEXIS 91808*

December 20, 2006, Decided
December 20, 2006, Filed

**COUNSEL:** [*1] For Kathleen Johns, Plaintiff: Isaiah
Lipsey, Jr., Southfield, MI

For Sterling Jewelers, Incorporated, Defendant: Stephen
D. Turner, Clark Hill (Grand Rapids), Grand Rapids, MI,
Rebecca J. Dukes, Clark Hill (Lansing), Lansing, MI

**JUDGES:** HONORABLE PAUL V. GADOLA,
UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PAUL V. GADOLA

**OPINION:**

ORDER

Plaintiff Kathleen Johns filed suit on September 29,
2006, alleging violations of the Family Medical Leave
Act ("FMLA"), *29 U.S.C. § 2601 et seq.*, and retaliation
for requesting time off under the FMLA, both allegedly
arising out of her former employment with Defendant
Sterling Jewelers, Inc. Now before the Court is
Defendant's motion to stay proceedings, filed on
November 1, 2006. Plaintiff has not filed a response.

*Eastern District of Michigan Local Rule 7.1* requires
that a "respondent opposing a motion **must** file a
response, including a brief and supporting documents
then available." E.D. Mich. L.R. 7.1(b) (emphasis added)
Local Rule 7.1(d)(2)(B) requires that responses to
non-dispositive motions are due within fourteen (14) days
of service of the motion. E.D. Mich. L.R. 7.1(d)(2)(B)
Accordingly, the response to [*2] Defendant's motion
was due on approximately November 20, 2006. *See Fed.*

*R. Civ. P. 6(e)* Since no response has been filed, the
Court must assume that Plaintiff does not oppose the
motion. *See* E.D. Mich. L.R. 7.1(b)

Defendant argues that this Court should stay the
proceedings of this Court because, under an employment
agreement between Plaintiff and Defendant, Plaintiff's
FMLA claims are subject to a mandatory binding
alternative dispute resolution program known as
"RESOLVE."

The Federal Arbitration Act, *see 9 U.S.C. §§ 1-15*,
establishes a liberal policy in favor of arbitration. *EEOC
v. Waffle House, Inc., 534 U.S. 279, 288-89, 122 S. Ct.
754, 151 L. Ed. 2d 755 (2002)*. Arbitration agreements in
the employment context are enforceable. *Circuit City
Stores, Inc. v. Adams, 532 U.S. 105, 112, 121 S. Ct. 1302,
149 L. Ed. 2d 234 (2001)* Even when claims arise
pursuant to statutory rights, a court has a duty to enforce
a valid arbitration agreement under the FAA. *See Stout v.
J.D. Byrider, 228 F.3d 709, 715 (6th Cir. 2001)*. When a
plaintiff has filed an action in a judicial forum after [*3]
having previously agreed to resolve his or her claims
through arbitration, a court must stay the judicial
proceedings. *9 U.S.C. § 3; Burden v. Check Into Cash of
Ky., LLC, 267 F.3d 483, 488 (6th Cir. 2001)* (citing
*Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388
U.S. 395, 400, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)*)

A determination of whether to stay proceedings and
compel arbitration requires a two-step inquiry. First, the
Court must determine whether the parties entered into a
valid and enforceable agreement to arbitrate. *AT&T
Technologies, Inc. v. Communications Workers of*

2006 U.S. Dist. LEXIS 91808, *3

*America.* 475 US 643, 649. 106 S Ct 1415, 89 L Ed 2d 648 (1986) Second, the Court must ascertain whether the claims asserted fall within the scope of the arbitration agreement *Id* When ambiguities exist as to the parties' intentions, those ambiguities should be resolved in favor of arbitration *Stout,* 228 F 3d at 715

In the instant case, Defendant Sterling notified all employees, through written materials, employee meetings, and workplace posters, that participation in the RESOLVE program was mandatory Plaintiff subsequently chose to remain employed with [*4] Sterling even after being so notified Plaintiff's continued employment is therefore construed as her acceptance of the terms of the RESOLVE program Therefore, the Court finds that there was a valid and enforceable agreement to arbitrate under the RESOLVE program

The RESOLVE program provides that it applies to, "Violations of federal, state, county, local or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment," and to "Retaliation for filing a protected claim . . or exercising protected rights under any statute." Def Br , Ex A, p 5 Therefore, because Plaintiff's claims allege violations of the federal FMLA and retaliation for requesting time off under the federal FMLA, those claims squarely fall within the scope of the arbitration agreement and are properly brought under the RESOLVE arbitration program

Accordingly, the Court being satisfied that Plaintiff has previously agreed to resolve her claims through Sterling Jewelers' RESOLVE arbitration program; Defendant Sterling Jewelers having sought a stay of the judicial proceedings until such arbitration has been completed in accordance with the terms [*5] of the program; Plaintiff failing to file any response to Defendant's motion to stay the proceedings in accordance with the terms of the program;

**IT IS HEREBY ORDERED** that Defendant's motion to stay this cause of action [docket entry 5] is **GRANTED**. This cause of action is **STAYED** until such time as the arbitration proceedings are completed in accordance with the terms of the agreement between Plaintiff and Defendant

**IT IS FURTHER ORDERED** that it will be the responsibility of each party to promptly NOTIFY the **Court** of any resolution of this cause of action

SO ORDERED

Dated: December 20, 2006

HONORABLE PAUL V GADOLA
UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES GRAY CHRISTIAN                    :

                    v                     :        CIVIL NO. JFM-99-2936

STERLING JEWELERS, INC. ET AL             :

...oOo...

MEMORANDUM

Plaintiff has brought this action for employment discrimination under Title VII and 42 U.S.C. § 1981. She also asserts a common law claim for intentional infliction of emotional stress. Defendants have a filed a Motion to Compel Arbitration and to Dismiss the Complaint. Plaintiff has not responded to the motion. The motion will be granted.

Defendants have established a written policy, communicated to their employees, requiring that all employment disputes be submitted to arbitration. The policy expressly covers, inter alia, "[d]iscrimination or harassment on the basis of race, sex, religion, national original, age, disability or other protective basis" and "[v]iolations of federal, state, county, municipal or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment." Although there is no indication in the record that Plaintiff signed an agreement expressly subjecting herself to this policy, she does not dispute that she continued to work for defendants after being notified of it. The policy is not violative of public policy and is enforceable

enforceable. See generally, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991); cf Carson v. Giant Food, Inc., 175 F.3d 325 (4th Cir. 1999); Brown v. ABF Freight Svs., Inc., 183 F.3d 319 (4th Cir. 1999).

A separate Order granting Defendants' motion is being entered herewith.

Dated: January 28 , 2000

J. Frederick Motz
Chief United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANCES GRAY CHRISTIAN            :

            V.            :            CIVIL NO. JFM-99-2936

STERLING JEWELERS, INC. ET AL            :

...oOo...

O R D E R

For the reasons stated in the accompanying Memorandum, it is, this ___ day of January, 2000,

ORDERED:

(1) that Defendants' Motion to Compel Arbitration and Dismiss the Complaint is Granted;

(2) the parties are directed to arbitrate this dispute;

(3) this action is Dismissed without prejudice;

(4) that the Clerk is directed to Close this file

J. Frederick Motz
Chief United States District Judge

# EXHIBIT 5



IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

PARVIN PEZHMAN,                    )        CASE NO. CV 2005 06 3567
                                   )
            Plaintiff,             )        JUDGE BURNHAM UNRUH
                                   )
vs                                 )
                                   )
STERLING JEWELERS, INC., *et al.*, )
                                   )        <u>JUDGMENT ENTRY</u>
            Defendants.            )
                                   )        (Final and Appealable)
                                   )

This matter comes before the Court on the Defendants' Joint Motion to Stay Pending Arbitration.  The Defendants assert in their Joint Motion that this matter should be stayed because the Plaintiff's claims are subject to a mandatory arbitration agreement  The Defendants' Joint Motion was filed with the Court on August 12, 2005  Per the Court's August 29, 2005 Order, the Plaintiff had until September 12, 2005 to respond to the Defendants' Motion  To date, the Plaintiff has not responded to the Defendants' Motion  Accordingly, the Defendants' Joint Motion to Stay remains unopposed.

Upon due consideration, the Court finds that the Defendants' unopposed Motion is well taken  WHEREFORE, the Court GRANTS the Defendants' unopposed Motion to Stay Pending Arbitration.

## STATEMENT OF CASE AND LAW

Plaintiff Parvin Pezhman ("Plaintiff") commenced the instant litigation on June 22, 2005 when she filed her Complaint for Discrimination with the Court. Named as Defendants in this litigation are Sterling Jewelers, Inc and Ron Evans. The Plaintiff alleges in her Complaint that the Defendants constructively terminated her employment on the basis of her gender and national origin, in violation of Ohio Revised Code Chapter 4112 (First Claim for Relief) and in violation of common law and public policy (Second Claim for Relief). The Plaintiff also asserts a claim against Defendant Sterling for wage discrimination under R.C 4111.17 (Third Claim for Relief). The Plaintiff seeks damages, including compensation, for "physical and/or emotional distress, pain, upset and humiliation * * *" *See,* Plaintiff's Complaint at ¶¶ 6,9.

After filing an Answer on August 11, 2005, the Defendants filed a Joint Motion to Stay Pending Arbitration on August 12, 2005. The Defendants assert in their Joint Motion that "all of Plaintiff's claims are subject to a mandatory arbitration agreement." *See,* Defendants' Joint Motion to Stay at page 2. Although granted an extension of time until September 12, 2005 to respond, the Plaintiff has not responded to the Defendants' Joint Motion. Accordingly, the Defendants' Motion remains unopposed. Upon due consideration and for good cause shown, the Court finds that the Defendants' Joint Motion is well taken.

The evidence establishes that during the Plaintiff's employment with Defendant Sterling, Sterling instituted its RESOLVE program ("RESOLVE"). RESOLVE is a mandatory dispute resolution program that became effective for all employees on June 1, 1998.

As set forth in the Defendants' Joint Motion, RESOLVE is a three (3) step process that serves as the sole means for settling workplace disputes alleging unlawful behavior between Sterling and its employees. *See,* Affidavit of Ron Evans. Pursuant to Step 1 of RESOLVE, an

employee who believes that he or she has been subjected to an unlawful employment action must contact the Program Administrator and file a complaint form. *Id* If the employee is not satisfied with the outcome of Step 1, RESOLVE then proceeds to Step 2 which provides an appeal to an outside mediator or a 5-member Review Panel. *Id* If the employee is not satisfied with the outcome of Step 2, RESOLVE then proceeds to Step 3 which provides for binding arbitration in accordance with the rules set forth by the American Arbitration Association *Id* RESOLVE specifies that "[t]he decision of the Arbitrator will be final and binding upon the employee and the Company." *Id*

> RESOLVE applies to claims including, but not limited to, the following:
>
> 1) Discrimination or harassment based on race, sex, religion, national origin, age, disability, or other protected basis;
>
> 2) **Personal injuries arising from an employment decision or action** except those covered by Workers' Compensation.

[*Emphasis added.*] *Id.* RESOLVE states that "[a]rbitration is the final step. An employee may not successfully file a lawsuit instead of using the RESOLVE program or accepting the Arbitrator's final decision." *Id.* [*Emphasis in original*] Awards and remedies are not limited or restricted by RESOLVE. *Id*

The undisputed evidence establishes in May, 1998, Defendant Sterling held a mandatory meeting for all employees working at Sterling's Akron headquarters. This mandatory meeting included a session introducing RESOLVE to employees. At this meeting, all attending employees received written materials regarding RESOLVE. Sterling also gave employees a letter from Vice-President of Human Relations, Jorene Whitney, advising them of the RESOLVE program and providing employees with a brochure detailing RESOLVE and its mandatory provisions

Following its mandatory meeting, Sterling displayed posters about RESOLVE near every timeclock area in its facility. These posters included a statement, printed in boldface type, that RESOLVE became effective for all employees on June 1, 1998 and was a mandatory and binding program. Sterling also printed an article about RESOLVE in its December 1998 "Link" publication provided to all employees.

The Plaintiff worked for Defendant Sterling for another two hundred ninety-six (296) weeks after RESOLVE was implemented. Prior to commencing this lawsuit, the Plaintiff never submitted any Complaint to the RESOLVE Program Administrator.

The Defendants assert in their undisputed Motion that this matter should be stayed pending resolution of the Plaintiff's claims pursuant to RESOLVE. The Court agrees.

"Ohio and federal courts encourage arbitration to settle disputes." *ABM Farms Inc. v. Woods* (1998), 81 Ohio St.3d 498, 500. R.C. 2711.02, titled "Court may stay trial", states:

\* \* \*

> (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration issue has been had in accordance with the agreement \* \* \*.

*[Emphasis added.]* The use of the term "shall" in a statute or rule connotes the imposition of a mandatory obligation. *State v. Campbell* (2001), 90 Ohio St.3d 320; *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102. As set forth in R.C. 2711.02, an agreement to arbitrate is irrevocable and enforceable unless there is a basis in law or equity for the revocation of the arbitration provision. *See, also, ABM Farms, supra,* 81 Ohio St.3d at 502. The trial court's decision to stay a matter pending arbitration will not be disturbed on appeal absent the finding of an abuse of discretion. *Terry v. Bishop Homes of Copley, Inc.* (March 26, 2003),

4

Ninth App. No. 21244 at *2; citing, *Reynolds v. Lapos Constr., Inc.* (May 30, 2001), Ninth App.

No. 01CA007780 at *3; *Harsco Corp. v. Carne Carrier Co.* (1997), 122 Ohio App.3d 406, 410,

*appeal not allowed by* (1997), 80 Ohio St.3d 1477

 The Ninth District Court of Appeals has recognized that "Ohio public policy favors

arbitration." *Terry v. Bishop Homes of Copley, Inc., supra,* Ninth App. No. 21244 at *2, *citing,*

*Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711; *Pfohl v. Steve Martin Custom*

*Homes* (Sept. 9, 1998), Ninth App. Case No. 18962 at *4. Consistent with that public policy,

Ohio courts recognize a presumption in favor of arbitration:

> The scope of an arbitration clause, that is whether a controversy is arbitrable
> under the provisions of a contract, is a question for the trial court to decide
> upon examination of the contract. *[Citation omitted.]* However, 'because of
> the policy favoring arbitration, * * * a clause in a contract providing for
> dispute resolution by arbitration should not be denied effect 'unless it may be
> said with positive assurance that the arbitration clause is not susceptible of an
> interpretation that covers the asserted dispute * * * '' *[Citations omitted.]*
> 'Any doubts should be resolved in favor of coverage under the contractor's
> arbitration clause.' *[Citation omitted.]*

*Monahan v. Schumacher Homes, Inc.* (Nov. 13, 2001), Fifth App. No. 2001CA00168 at *2; *see*

*also, Newell v. Marc W. Lawrence Bldg., Corp.* (May 8, 1995), Fifth App. No. 94-CA-292 at *2

("There is a ' * * * strong presumption in favor of arbitration, and any doubts should be resolved

in favor of coverage under the arbitration clause." *[Citation omitted.]*)

 Federal law also favors arbitration. *See, Allied-Bruce Terminix Cos., Inc. v. Dobson,* 513

U.S. 265; *Perry v. Thomas,* 482 U.S. 483, 490 (1987). With regard to the use of arbitration to

resolve workplace issues, the Federal Arbitration Act ("FAA") provides:

> [a] written provision in * * * a contract evidencing a transaction involving
> commerce to settle by arbitration a controversy thereafter arising out of such
> contract or transaction, or the refusal to perform the whole or any part thereof,
> or an agreement in writing to submit to arbitration an existing controversy
> arising out of such a contract, transaction, or refusal, shall be valid,

5

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See*, 9 U.S.C. §2.

Under the RESOLVE program there is a three (3) step process through which the Plaintiff must proceed with her claims. Step 3 of RESOLVE specifically provides that the Plaintiff must submit her claims to binding arbitration in accordance with the rules set forth by the American Arbitration Association. The Court finds that, in accordance with the RESOLVE program, the claims against the Defendants must be arbitrated.

WHEREFORE, based upon the foregoing, the Court GRANTS the Defendants' unopposed Joint Motion to Stay Pending Arbitration.

<u>CONCLUSION</u>

WHEREFORE, based upon the aforementioned, the Court GRANTS the Defendants' unopposed Joint Motion To Stay Pending Arbitration.

In light of this ruling, the Defendants' Joint Motion To Stay Discovery, whereby the Defendants seek a Court Order staying discovery pending a ruling on their Joint Motion To Stay Pending Arbitration, is MOOT.

This is a final appealable order and there is no just cause for delay.

IT IS SO ORDERED.

_____
JUDGE BRENDA BURNHAM UNRUH

Pursuant to Civ.R. 58(B), the Clerk of Courts shall serve upon all parties notice of this judgment and its date of entry on the Journal.

_____
JUDGE BRENDA BURNHAM UNRUH

Attorney Pamela Pantages                    Attorneys Stephen Zashin/Christina M Janice

6

# EXHIBIT 6

DIANA ZALESKI

2006 NOV -8  PM 3:58

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

COUNTY OF SUMMIT

| | | |
|---|---|---|
| LIZABETH BINNS | ) | CASE NO. CV 2006 08 5439 |
| Plaintiff | ) | JUDGE SPICER |
| vs | ) | |
| STERLING JEWELERS, INC. | ) | ORDER |
| Defendant | ) | |

- - -

    This matter is before the Court upon Defendant Sterling Jewelers Inc.'s ("Sterling") motion to stay proceedings pending use of Sterling's alternate dispute resolution program, filed October 11, 2006. Plaintiff, Lizabeth Binns ("Binns"), has not filed a response brief. The Court deems all matters filed and will proceed to consider Sterling's motion.

    Sterling submits that the Binns agreed to submit any employment related disputes to Sterling's mandatory alternative dispute resolution program ("RESOLVE"). Sterling states that RESOLVE encompasses all of the claims asserted in Binn's complaint and as a result, this case should be stayed pending the outcome of RESOLVE.

Ohio public policy generally encourages the resolution of disputes through arbitration. *Kelm v. Kelm* (1993), 68 Ohio St.3d 26. An arbitration clause should not be denied effect, therefore, unless the court determines to a high degree of certainty that the clause does not cover the asserted dispute. *Owens Flooring Co. v. Hummel Constr. Co.* (2001), 140 Ohio App.3d 825.

Binns has not countered the evidence presented by Sterling. Therefore, the Court finds that the parties agreed to submit all disputes to the mandatory alternative dispute program, RESOLVE and that all claims asserted by Binns in her complaint are subject to arbitration. Therefore, Sterling's motion is granted and this case is stayed pending arbitration.

It is so Ordered.

_____
JUDGE MARY F. SPICER

cc:  Attorney Stephen S. Zashin
     Attorney Eric D. Hall

JD:lcb
06-5439

# EXHIBIT 7

A-FILED
COURT OF COMMON PLEAS

2001 APR 17 PM 2:05

DAN FOLEY
CLERK OF COURTS
MONTGOMERY CO., OHIO

## IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO
### Civil Division

| | | |
|---|---|---|
| JILL BURT, | : | Case No 00-CV-5890 |
| Plaintiff, | : | |
| | : | (Judge David A. Gowdown) |
| v | : | |
| STERLING JEWELERS, INC. | : | DECISION, ORDER AND ENTRY |
| D/B/A OSTERMAN JEWELERS | | OVERRULING DEFENDANT'S |
| | : | MOTION TO DISMISS AND |
| Defendant | | ORDERING ARBITRATION |
| | : | |

This matter is before this court on Defendant Sterling Jewelers, Inc's ("Sterling") Motion to Dismiss or in the Alternative, Motion to Stay Pending Arbitration filed January 18, 2001 Plaintiff, Jill Burt, ("Ms Burt") filed her Memorandum in Opposition on January 29, 2001 On February 27, 2001, Defendant Sterling filed a Reply Brief

### I. FACTS

This action was commenced on December 13, 2000 when Plaintiff filed this 4 count action against Sterling alleging emotional distress as a result of working at a Sterling jewelry store during two thefts which occurred on December 13, 1998 and April 26, 1999 Defendant Sterling claims that Plaintiff was subject to a mandatory arbitration agreement containing a three-hundred day statute of limitations and as a result the Court should dismiss Plaintiff's complaint or in the alternative this Court should stay the instant matter and refer Plaintiff's

claims to arbitration  During Plaintiff's employment, Sterling began this mandatory dispute

resolution program which became effective for all employees June 1, 1998  Plaintiff however,

claims that she had no knowledge of the arbitration program, RESOLVE, and has never agreed

to be bound by its terms and therefore should have her day in court with a trial by jury

### III. LAW AND ANALYSIS

Defendant argues that Plaintiff is bound to pursue her claims through RESOLVE

because (1) a valid contract existed between Sterling and Plaintiff to resolve workplace

disputes through the arbitration program; (2) Plaintiff is estopped from pursuing this action in

this Court; and (3) Plaintiff waived any rights that she may have had to pursue her claims in

court. In order for a contract to exist there must be a meeting of the minds, which includes

offer and acceptance

Defendant Sterling contends that in May 1998, it held a special training session

concerning RESOLVE, to which it required all employees working at the Dayton Mall Store to

attend the training session  During this session Sterling indicated that RESOLVE would

become effective for all employees as of June 1, 1998  Defendant Sterling further argues that

employees who continued to work for Sterling after this training session gave their acceptance

of the program by continuing their employment  Therefore, Sterling asserts, it follows that

because Plaintiff continued to work under the terms of RESOLVE, her silence manifested an

acceptance of RESOLVE and therefore a valid contract existed between Sterling and Plaintiff

which required her to submit this dispute to RESOLVE. Defendant Sterling contends that after

the meeting, a RESOLVE poster was hung in the restroom and Plaintiff's co-workers swore

under oath that they saw the poster every time they used the restroom  Therefore, unless

2

Plaintiff did not use the restroom or wash her hands in the thirteen months after the meeting, it is unlikely she never saw the RESOLVE poster

Plaintiff argues that she had no knowledge of the RESOLVE program and she never agreed to be bound by its terms, and therefore there was no offer, acceptance, or meeting of the minds

Defendant further argues that even if this court does not find that Plaintiff's continued employment constituted an acceptance of RESOLVE, she is equitably estopped from claiming that RESOLVE does not apply to her lawsuit because she continued to work for Sterling for nearly 13 months after Sterling implemented RESOLVE

Defendant also claims that even if this Court does not find that Plaintiff accepted the terms of RESOLVE or that she is equitably estopped from asserting that RESOLVE does not apply to this lawsuit, Plaintiff has waived any objection to RESOLVE by continuing her employment after June 1, 1998 Sterling argues that it clearly notified Plaintiff that all of their workplace disputes, through training and its poster, would be submitted to RESOLVE

In order for a contract to exist there must be a meeting of the minds As a part of that meeting of the minds, there must be a definite offer on one side and an acceptance on the other Garrison v. Davtonian Hotel et al. (1995), 105 Ohio App.3d 322 No particular form is necessary to constitute an offer or acceptance 15 Ohio Jurisprudence 3d (1995), Compromise, Accord, and Release, Section 4 Whether that has occurred is a question of fact to be determined from all the relevant facts and circumstances. Id.

The elements of equitable estoppel are: (1) representation by the party to be estopped; (2) the representation communicates some fact or state of affairs in a misleading way; (3)

3

which includes reasonable, actual reliance by the second party; (4) who would suffer prejudice or pecuniary disadvantages unless the first party is estopped from asserting an otherwise valid right in contradiction to his earlier representation. Culp v. Marshall & Melhorn (1999), 133 Ohio App.3d 814, 819

This court finds that although Plaintiff claims she never expressly manifested an acceptance of the RESOLVE program, it is clear that Sterling, by conducting a mandatory meeting for all employees, and posting signs in a conspicuous area, did what it was required to do in order to assure that all employees were aware of the program. Furthermore, by continuing to work after the RESOLVE program was implemented, her silence manifests an acceptance of terms of the program. In addition, several of Plaintiff's co-workers signed affidavits stating that they were aware of the RESOLVE program through both the mandatory meeting and the large poster hung in the restroom regarding the arbitration program. Therefore, this court finds that Plaintiff should have been aware of the program and should have submitted her claims to RESOLVE under its terms.

## III. CONCLUSION

Upon duly considering the above matter, Defendant Sterling's motion to dismiss is hereby OVERRULED and the matter is hereby Ordered to be arbitrated. The Defendant is Ordered to submit an application and entry staying this action pending arbitration.

SO ORDERED:

S/DAVID A. GOWDOWN
DAVID A. GOWDOWN, JUDGE

Copies of this Entry were forwarded to all parties listed below by ordinary mail this

4

filing date

Stephen S Zashin & Robert C Hicks, ZASHIN & RICH CO, L.P.A., Attorneys for Defendant Sterling, Inc., 55 Public Square, Suite 1490, Cleveland, Ohio, 44113, (216) 696-4441

David Greer & Karen Dunlevey, BEISER, GREER & LANDIS, LLP, 400 National City Center, 6 N Main Street, Dayton, Ohio, 45402-1908, (937) 223-3277

JAMES RUSSELL, Bailiff        225-4416

FILE COPY

5