IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EVELYN FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08CV154-SRW |
| | ) | |
| STERLING JEWELERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Evelyn Freeman brings a federal ERISA claim against defendant Sterling Jewelers, Inc., her former employer ("Sterling"), and state law claims against Sterling and two of her former co-employees, Amy Golden and Robynne Knew. This action is presently before the court on the motion filed by defendants to stay the proceedings and compel binding arbitration. (Doc. # 2). Upon consideration of the motion, the court concludes that defendants' motion to stay and to compel arbitration is due to be granted.

**BACKGROUND**

Plaintiff began her employment with defendant Sterling in 1997. (Complaint, ¶ 18).[1] In the spring of 1998, defendant Sterling launched its "RESOLVE" program of alternative dispute resolution. Sterling directed its store managers to provide copies of the RESOLVE program pamphlet to existing employees, to hold "mini meetings" to review the program with all employees, and to display a poster regarding the program; these steps were to be

---

[1] Although there is no evidence regarding the date on which plaintiff commenced employment, this allegation is apparently undisputed. (See Defendants' brief, p. 4).

completed before May 30, 1998. Sterling required its district managers to monitor the store managers' compliance with the implementation steps and to return completed implementation checklists to Sterling's employee relations department by June 10, 1998. (Spagnola aff., ¶ 12 and Exhibit B). Sterling distributes copies of the RESOLVE program pamphlet to its employees each year and posts the terms of the program on its intranet. Additionally, Sterling store managers are required to place a RESOLVE program poster in a location readily accessible to store employees. The poster states that the program is "effective June 1, 1998," is "applicable to all employees," and is "a mandatory and binding program." It further states that "[a]n informational program pamphlet may be obtained through your Store Manager or by calling 1-800-394-4205." (Spagnola aff., ¶¶ 13-15 and Exhibit C). In an audit Sterling conducted of the Dothan store on July 26, 2005 – while plaintiff was the store manager – the auditor noted that the store had its RESOLVE program poster posted. (Spagnola aff., ¶ 15 and Exhibit D).

The RESOLVE program provides a three-step process for addressing the claims of an employee who believes that she has been subjected to an unlawful employment action. In Step 1, the employee initiates the process by completing a claim form and sending it to the RESOLVE program administrator. Sterling investigates the claim and responds to the employee. An employee who is dissatisfied with the answer she receives at Step 1 may proceed to Step 2 by completing and returning a Step 2 appeal form. The Step 2 appeal is resolved either by an outside mediator or by a 5-member review panel. The Step 2 decision is binding on Sterling, but not on the employee. If dissatisfied with the Step 2 appeal

decision, an employee may demand binding arbitration before a jointly-selected outside arbitrator from the American Arbitration Association (whose fees will be paid by Sterling) by completing and returning a Step 3 appeal form. The arbitration is the final step of the process. (Spagnola aff., ¶¶ 5-11 and Exhibits A).

Sterling terminated plaintiff's employment on November 2, 2006. On November 14, 2006, the RESOLVE program manager, Joseph Spagnola, mailed plaintiff a program brochure and a claim form. Several weeks later, plaintiff's attorney sent a letter to Sterling's CEO, advising him that plaintiff had been "wrongfully terminated" and asking that he "put her back to work in the position she was in to avoid the possibility of litigation." On January 16, 2007, Sterling's Vice President of Employee Relations responded to the letter and advised counsel of the RESOLVE alternative dispute resolution program. Four weeks later, plaintiff submitted a claim form, invoking Step 1 of the RESOLVE alternative dispute resolution process. Plaintiff's claim was denied at Step 1 and, on April 12, 2007, plaintiff's counsel submitted a Step 2 appeal claim form to Sterling on behalf of the plaintiff. Pursuant to plaintiff's Step 2 appeal, a RESOLVE panel – consisting of employees chosen by plaintiff from a pool of about twenty-five employees – convened to consider plaintiff's claims. The panel contacted plaintiff with questions and, ultimately, found no unlawful activity and denied plaintiff's request for remedial action. On August 9, 2007, Spagnola advised plaintiff (through her attorney) of the panel's decision and of her right to request binding arbitration pursuant to Step 3 of the RESOLVE program. (Spagnola aff., ¶¶ 16-24 and Exhibits E, F, G, H, I, and K).

Plaintiff commenced the present action on January 25, 2008 in the Circuit Court of Houston County. Defendants thereafter removed the action to this court and, on March 12, 2008, moved for an order compelling plaintiff to submit to binding arbitration under the RESOLVE program.[2]

## DISCUSSION

The Federal Arbitration Act, Title 9 of the United States Code, provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce[3] to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the Act allows a party to an agreement containing an arbitration provision to petition the court for an order compelling the other party to arbitrate. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.§ 4. "Parties cannot be forced to

---

[2] On May 9, 2008, the Clerk docketed the written consent of all parties to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. ## 21-23).

[3] The United States Supreme Court has interpreted the term "involving commerce" in the Federal Arbitration Act as providing for enforcement of arbitration agreements "'within the full reach of the Commerce Clause[.]'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003)(citation omitted). Plaintiff makes no argument that defendant Sterling's business, or its relationship with its employees, does not involve commerce. Evidence filed with defendant's motion indicates that Sterling, which operates a number of stores including the Dothan, Alabama jewelry store at which plaintiff worked, has its corporate office in Akron, Ohio. (See Spagnola aff.).

submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co., 957 F.2d 851, 854 (11th Cir. 1992)(citations omitted).  "Thus, 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.'" Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler- Plymouth, Inc., 473 U.S. 614, 626 (1985)).  "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."  First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995); see also Employers Insurance of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001)("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements.").  "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.  Mitsubishi Motors Corp., *supra*, 473 U.S. at 626.

**The Existence of an Agreement to Arbitrate**

It is undisputed that none of the parties signed an agreement to arbitrate.  However, "[n]o signature is required to satisfy the FAA's written agreement requirement. . . . 'All that is required is that the arbitration provision be in writing.'"  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005)(quoting Medical Dev. Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973)).  The terms of the RESOLVE program are in writing; whether those terms constitute an agreement depends on whether the requirements for a unilateral contract have been met.  *Ex Parte* Amoco Fabrics and Fiber Co., 729 So.2d 336, 339 (Ala. 1998).  "Employer communications meeting the traditional requirements for the

formation of a unilateral contract – an offer, communication, acceptance, and consideration – will bind the parties. Id. To constitute an offer, the language in the RESOLVE program must be "'specific enough to constitute an actual offer rather than a mere general statement of policy,'" and must have been "meant to be an offer for a unilateral contract." See id. (quoting Hoffman-La Roche, Inc. v. Campbell, 512 So.2d 725, 734 (Ala. 1987)). "'Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs.'" Amoco Fabrics, *supra*, 729 So.2d at 339 (quoting Hoffman-La Roche, 512 So.2d at 734).

The RESOLVE program brochure states, in its opening paragraphs, that it is '[e]ffective June 1, 1998," and that it is "[a]pplicable to all employees." It then describes, in detail, the three steps of the program and the claims covered under the program. The first question in the "Questions and Answers" section of the brochure is: "If my dispute is covered, is it necessary that I use this program?" The response states, "All employees are required to use the program to resolve applicable disputes." (Exhibit A to Spagnola aff.). Defendants have filed evidence that all existing employees were advised of the implementation of the RESOLVE program in mandatory meetings conducted by their managers, and that they were provided copies of the RESOLVE pamphlet. Additionally, defendant Sterling mandated that its stores display the RESOLVE poster in work areas; the poster advised employees about how to get a brochure, and also stated that the program was "[e]ffective June 1, 1998" and "[a]pplicable to all employees." It further stated in bold capital letters that "**THIS IS A MANDATORY AND BINDING PROGRAM**." (Exhibits

A, B, and C to Spagnola aff.). As noted above, Sterling further distributed the RESOLVE program brochure to all employees annually, and posted it on the company intranet. (Spagnola aff., ¶¶ 13-15).[4] The court finds that the language of the RESOLVE program brochure was specific enough to constitute an actual offer and was intended to be an offer and, further, that the offer was communicated to the plaintiff. Plaintiff remained employed by Sterling until November 2006. By continuing her employment for several years after the program was implemented and communicated to her, plaintiff accepted the offer. See Amoco Fabrics, 729 So.2d at 339 ("If the provision in the [employer's] manual meets the contractual requirements for an offer, then we must determine whether the evidence indicates that the offer was communicated to the employees, either by issuance of the manual or otherwise. Finally, we must determine whether the evidence indicates that the employees accepted the offer by continuing their employment after becoming aware of the offer. By continuing their employment, the employees would supply the remaining elements of a unilateral contract, acceptance, and consideration.")(citations omitted).

Additionally and significantly, plaintiff has manifested her acceptance of the offer by availing herself of the benefits of the RESOLVE program. She invoked her rights at Step 1 of the RESOLVE process to investigation of her grievance and at Step 2 to have that grievance heard and determined by a review panel. Defendants' evidence establishes the existence of an agreement between Sterling and the plaintiff to address certain disputes

---

[4] Plaintiff has filed no evidence in opposition to the motion and has not denied, even in argument, that she received the brochure and was informed of the terms of the RESOLVE program.

through the RESOLVE program which requires – if the dispute is not resolved to the employee's satisfaction in the two initial steps of the process – that the employee pursue redress through binding arbitration.

### The Scope of the Agreement to Arbitrate

The RESOLVE program brochure states that it provides employees with a way to handle "employment disputes that involve alleged unlawful actions." It further indicates that "[a]n employee who believes he/she has been subjected to an unlawful employment action, harassment or termination" must complete a RESOLVE program complaint form specifying how he or she has been subjected to an unlawful action. The document further specifies that:

**The *RESOLVE* Program applies to only these types of claims:**

- ➢ Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other protected basis.

- ➢ Retaliation for filing a protected claim (such as Workers' Compensation) or exercising protected rights under any statute.

- ➢ Violations of federal, state, county, local or other government constitution, statute, ordinance, regulation, public policy or common law affecting economic terms of employment.

- ➢ Personal injuries arising from an employment decision or action except those covered by Workers' Compensation.

- ➢ Breach of any express or implied contract; breach of a covenant of good faith and fair dealing, claims of wrongful termination or constructive discharge, or claims for incentives (such as bonuses).

- ➢ Embezzlement, theft, restitution, trade secrets/proprietary information; other willful misconduct.

(Exhibit A to Spagnola aff.)(emphasis in original).

In Count One of the complaint, plaintiff alleges that defendant Sterling violated the Employee Retirement Income Security Act (ERISA) and, in Count Two, that Sterling discriminated against plaintiff on the basis of her age in violation of Alabama law. In Counts Three, Four, and Five, plaintiff brings claims against the defendants under Alabama common law, alleging that defendants Sterling, Golden and Knew "contrived, combined, federated and conspired among themselves" to interfere intentionally with plaintiff's business relationship with Sterling, to invade plaintiff's privacy, and to engage in outrageous conduct causing plaintiff to suffer severe emotional distress. (Complaint, Counts 3-5; see ¶¶ 30-31, 35-36, 41-42). Plaintiff's claims allege violations of federal and state statutes and state common law which affected the economic terms of her employment. The claims plaintiff seeks to litigate in the present case clearly fall within the express terms of the RESOLVE program.[5]

### Applicability to Plaintiff's Claims Against the Individual Defendants

Defendants Golden and Knew are not parties to the arbitration agreement between plaintiff and Sterling. However, as noted above, plaintiff's claims against Golden and Knew (Counts Three through Five) expressly allege that "Defendant Sterling Jewelers, Inc. Defendant, Amy Golden, and Defendant Robynne Knew have contrived, combined, federated and conspired among themselves to do the acts described in [these] counts." (Complaint, ¶¶ 30, 35, 41). Plaintiff further asserts, in each of the claims against Golden and

---

[5] Plaintiff does not argue that her claims do not fall within the language of the RESOLVE program but only that she did not agree to be bound by the terms of the program.

Knew, that her injuries and damages were proximately caused by the conduct of Golden and Knew "and the conspiracy of Defendant Sterling Jeweler's, Inc., with Defendants Golden and Knew, to effect that unlawful act[.]" (Id., ¶¶ 31, 36, 42).  Under these circumstances, plaintiff is equitably estopped from avoiding arbitration with Golden and Knew.  See MS Dealer Service Corp. v. Franklin, 177 F.3d 942, 947-48 (11th Cir. 1999)(equitable estoppel allows a nonsignatory to an arbitration agreement to compel arbitration when the party to the agreement "'raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract'"; allowing non-party to the arbitration agreement to compel arbitration where the signatory plaintiff's allegations of conspiracy and collusive behavior between the non-party and the signatory defendant demonstrated that plaintiff's claims against both parties were "'based on the same facts and [were] inherently inseparable.'" )(citations omitted); see also Gambardella v. Pentec, Inc., 218 F.Supp.2d 237 (D. Conn. 2002).[6]

## CONCLUSION

The evidence establishes that Sterling and plaintiff entered into an agreement which included a provision for binding arbitration, and that plaintiff's claims in the present action are within the scope of that agreement.

For the foregoing reasons, it is

ORDERED that defendants' motion to stay this action and to require plaintiff to

---

[6] Plaintiff makes no argument that Golden and Knew cannot enforce the arbitration agreement; as noted previously, she contends only that there was no agreement.

submit her claims to arbitration is GRANTED.  Plaintiff is DIRECTED to submit all claims against defendants currently pending before this court to binding arbitration in accordance with the terms of the agreement as set forth in the RESOLVE program documents.  The present action is hereby STAYED pursuant to 9 U.S.C. § 3, pending completion of the arbitration.

The Clerk of the Court is DIRECTED to place this case on the administrative docket of the court.  The parties may request reinstatement of this case to the active docket of this court as appropriate.

Done, this 18th day of August, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

(a) **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

(b) **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

(c) **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

(d) **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

(e) **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).